WILLIAM T. SEELY's ADM'R, Plaintiff in Error, *v.* JAMES P. BECK, Defendant in Error.

1. *Co-securities — Risks Assumed.* — It may be said, as a general rule, that co-securities undertake to assume the same risks and responsibilities, and neither can gain any advantage over another, but all subject themselves to the same liabilities.

2. *Sureties — Rights.* — Sureties are entitled to the benefit of all securities which have been taken by any one of them to indemnify themselves; and courts of equity hold them entitled, upon payment of the debt due by their principals to the creditor, to have the full benefit of all the collateral securities held by the creditor.

3. *Co - securities — Agents.* — Where A. and B. were co-securities on the bond of an administrator who became insolvent, and A. as security was compelled to pay the amount in default, the fact that prior to the execution of the bond B. had entered into an agreement with the administrator to act as his agent in receiving and paying out moneys belonging to the estate of the deceased, in consideration of the payment to him of a portion of the commissions allowed the administrator by court, does not deprive B. of his position as surety and render him liable to A. as principal on the bond. That he was entitled by law primarily to administer, and waived his rights in favor of a public administrator, or that he had an interest in the estate, will not alter the case.

4. *Agent — Partner.* — Under such circumstances, B. would be liable only upon the assumption that the agreement created a partnership between himself and the administrator, and no partnership can exist in the office of administrator.

*Error to Fourth District Court.*

*Adams*, for plaintiff in error.

I. On principles of equity, independent of contract, the appellant, although ostensibly a surety for Warfield, was, as between himself and the other sureties, a principal, so far as the administration of the Beck estate was concerned. Whether a party to an obligation is a mere surety or a principal, depends upon the question whether such obligation was made for his benefit. In this case, the two official bonds were made for the joint benefit of the appellant and Warfield. They were made expressly for the purpose of administering the Beck estate, and in order that the appellant might administer them in the name of Warfield as public administrator, and thereby receive two-thirds of the profits or commissions to be allowed in the name of Warfield. These facts constitute the appellant a principal as between himself and the other sureties. (See 1 Story on Eq. §§ 493–498 ; McPherson v. Talbott, 10 Gill. & John. 499 ; Mayhew v. Crockett, 2 Swanst. 193 ; Turner v. Davis, 2 Esp. 478 ; Deering v. Earl of Winchelsea, Cox Ch. 318, and 2 Bos. & Pul. 270 ; Sterling v. Forrester, 3 Bligh, 575–596 ; Craythorne v. Swinburne, 14 Ves. 159 ; Onge v. Truclock, 2 Mol. 31 ; Copis v. Middleton, 1 Turn. & Russ. 224 ; Hodgson v. Shaw, 3 My. & Keen, 191 ; *ex parte* Gifford, 6 Ves. 805 ; Campbell v. Mesier, 4 Johns. Ch. R. 334–338 ; Higgins v. Dellinger, 22 Mo. 397 ; Rice v. Morton, 19 Mo. 285.)

II. As the bonds were made for the benefit of the appellant, if he had paid the whole deficit he could not have demanded contribution from the respondent or the other sureties. As this could not be done, by parity of reason, he must save them harmless from the results of an obligation made for his own benefit. (See the authorities above cited.)

*Prewitt*, for defendant in error.

I. This is not a question of contribution between sureties. There is no allegation in plaintiff's petition that defendant had not contributed his share, or that he had received any indemnity

which he was bound to share with his co-securities. The contract arising from the bond is expressly a contract of co-securityship. If defendant, then, is liable as principal, it must be by virtue of some act or contract outside of the bond, raising an obligation contrary to and in contravention of that raised by the express terms of the bond. If defendant had agreed to indemnify plaintiff's intestate, he would be liable to him whether defendant signed the bond or not, and not because he signed the bond; and if he received any property from Warfield, to hold for the benefit of Seely, he would be liable for it whether he signed the bond or not; but there is no allegation of either of these facts in plaintiff's petition. The agreement does not make him a partner of Warfield, or a principal in the contract in any way, but only an agent of Warfield, acting under his directions and receiving part of Warfield's commission for his compensation. (Burckle v. Eckhart, 1 Den. 337; Berthold *et al.* v. Goldsmith, 24 How. 526; Blake v. Cole, 22 Pick. 97; Bradley v. White, 10 Met. 303; Denny v. Cabot, 6 Met. 82; Vanderburgh v. Hull, 20 Wend. 70; Tom v. Goodrich, 2 Johns. 218.)

II. The law of contribution does not make a co-surety a principal because he receives an indemnity from his principal; it only requires him to hold it for their joint benefit. (Lead. Cas. in Eq. 119; 1 Story on Eq. 574, § 499; Moore v. Moore, 4 Hawks, 358; Carpenter v. Kelley, 9 Ohio, 106; Agnew v. Bell, 4 Watts, 31.)

WAGNER, Judge, delivered the opinion of the court.

This was an action in the nature of a bill in equity, brought by the plaintiff as administrator of Seely, to recover a sum of money alleged to have been paid by Seely as surety for the defendant.

It seems that Elisha N. Warfield, who was public administrator of Cooper county, administered on the estates of Preston Beck, Jr., and J. J. Beck; that the defendant was entitled by law to administer on said estates, but that he voluntarily waived that right and agreed to let Warfield take charge of the same. The Probate Court of Cooper county required Warfield to give an additional bond in each estate before it would allow him to administer on and

take charge of the assets. Seely and Jas. P. Beck, with others, signed these bonds, as securities. Prior to the execution of the bonds, Beck, the defendant, and Warfield entered into an agreement reciting that Beck was entitled to administer on the estates by law, but that he was willing the estates should be administered on by Warfield as public administrator.

It was then further agreed between the parties that Beck should do all he could, under the directions of Warfield, to aid him in the administration of the estates, and assist, under his instructions, in loaning or distributing the assets under the order of the Probate Court. And Warfield agreed to appoint, and did appoint, Beck his agent in Missouri, to receive and distribute the moneys that might be sent from New Mexico, belonging to the estate of P. Beck, Jr., for which services he was to be paid a reasonable commission. Warfield was to charge for his services as administrator the usual commissions; out of which, after the payment of all such expenses as were not otherwise allowed by the Probate Court, he was to allow and pay Beck for his services two-thirds of the commissions, and retain one-third for himself.

Warfield, after administering on the estates, became insolvent, and was a defaulter to a considerable amount, which the securities were obliged to pay. This action is now brought to charge Beck as a principal on the bond, and recover the money so paid by the sureties. The defendant, in the Circuit Court, demurred to the petition, and the demurrer was overruled. The cause was then appealed to the Fourth District Court, where the judgment of the Circuit Court was reversed, and the plaintiff has prosecuted his writ of error to this court.

This is not a question of contribution between sureties, but it is an attempt to hold a person who signed as a surety a principal in the bond. It may be said, as a general rule, that sureties undertake to assume the same risks and responsibilities, and neither can gain any advantage over another, but all subject themselves to the same liability. It has, therefore, been held that where one surety, without the knowledge of his co-surety, by previous arrangement with the principal debtor, received one-half of the sum borrowed, he was not entitled to contributions from

the other surety, who might have undertaken the responsibility in the confidence that his associate was equally with himself exposed to risk. (McPherson v. Talbott, 10 Gill. & John. 499.) Sureties are entitled to the benefit of all securities which have been taken by any one of them to indemnify themselves; and courts of equity hold them entitled, upon payment of the debt due by their principal to the creditor, to have the full benefit of all the collateral securities held by the creditor. (1 Story's Eq. Jur. § 499; McCune v. Belt, 38 Mo. 281; Hayes v. Ward, 4 Johns. Ch. 123.)

But these established principles furnish no aid in determining the main question, whether the defendant Beck can be deprived of his position as surety and made to assume the character of a principal. The case of Higgins v. Dellinger, 22 Mo. 397, is greatly relied on by the plaintiff in error as supporting his theory and maintaining his views.

But I cannot see that it has any bearing or controlling influence in the present case. In that case it was merely decided that a party who is compelled to pay a note which he signed as security for another, who gave it for money borrowed by him as *agent* for a third party, may recover the amount directly from him for whom the money was borrowed; and it makes no difference that the agent did not disclose his agency, or that the money was loaned and the note signed by the security upon his individual credit. This is only a declaration of the familiar and admitted rule that although the agent may bind himself personally, yet this by no means shows that the principal may not also be bound as a party to the contract through his agent. But how can it be said that the defendant impressed himself with the character and obligations of principal in the bond?

It does not appear that the bond was made for his benefit, nor had he any control over the assets which came into the hands of the administrator, only so far as the administrator saw proper to employ him as an agent. That he was entitled by law primarily to administer, or that he had an interest in the estates, cannot operate to his disadvantage; for when the public administrator took charge of the estate he alone was then responsible and liable

for the acts of any agent which he chose to employ. The securities assumed the risk, and undertook to be responsible for the acts of Warfield, and at the same time invested him with a capacity to do all things touching the matters of administration, which necessarily included the transaction of some of the business through agents and attorneys. I am wholly unable to see that any other relation subsisted between Warfield and Beck than that of principal and agent, and it is not made to appear that the appointment of Beck operated as a fraud on the other securities, or that they suffered injury through him.

The action, then, can only be maintained upon the assumption that the agreement created a partnership between Warfield and Beck, and it is a sufficient answer to say that there can be no partnership in the office of administrator.

The judgment of the District Court is affirmed. The other judges concur.