THOMAS C. FURNOLD, Defendant in Error, v. THE BANK OF THE STATE OF MISSOURI *et al.*, Plaintiffs in Error.

1. *Equity — Co-sureties — Contribution — Judgment liens — Subrogation.* — Judgment was recovered against a number of co-sureties, who, subsequently thereto, sold sundry lands owned by them respectively while the same were subject to the lien of the judgment. The purchaser of one parcel, to prevent its sale under the judgment, paid the amount due thereon, and afterward brought suit in equity, praying that the land disposed of by the co-sureties, while subject to the same lien, might be subjected to a ratable proportion of the debt paid by him. *Held*, that while at law plaintiff's payment of the amount of the judgment operated as an extinguishment of the lien, yet equity, in furtherance of justice, would subrogate plaintiff to the rights of his grantor, and charge the lands bound by the lien in the hands of the other sureties or their grantees who purchased with notice. And the payment of the debt by plaintiff operated in equity as an immediate assignment to him of all the securities held by the judgment creditor. In such case it was the duty of the latter to make the transfer *instanter*.

*Error to Fifth District Court.*

*Jas. McFerran*, for plaintiffs in error.

The Circuit Court erred in substituting the defendant in error in the place of Thomas Preston as co-security, and in holding that the defendant in error had a right to have the lien revived, and his claim enforced against the land of Selby, Cox & Gifford.

*Asper & Pollard*, for defendant in error.

I. In this case plaintiff stands in the same situation as a surety, and is entitled to the same equities. (1 Sto. Eq. § 638; Chesebro v. Millard, 1 Johns. Ch. 409; King v. Baldwin & Fowler, 2

Furnold v. The Bank of the State of Missouri et al.

Johns. Ch. 554; Moses v. Murgatroyd, 1 Johns. Ch. 119; Hays v. Ward, 4 Johns. Ch. 130; Curtis v. Tyler, 9 Paige, 32; Miller v. Woodward & Thorne, 8 Mo. 169; Crump v. McMurtry, *id.* 408; Cole County v. Angney, 12 Mo. 132; Seeley's Adm'r v. Beck, 42 Mo. 143.)

II. Where land is charged with a burden, the charge ought to be equal, and each part must bear its equal proportion; and the court will compel the creditor to aid this right of contribution by assigning his bond or security to the surety or owner of the land, who has to pay the debt. (Stephens v. Cooper, 1 Johns. Ch. 425.)

WAGNER, Judge, delivered the opinion of the court.

This was a suit in the nature of a bill in equity, seeking to subject certain lands owned by some of the defendants to the payment of a ratable sum which the plaintiff had been compelled to pay by reason of a lien existing on his land, and to require the Bank of the State of Missouri to assign certain claims and judgments to plaintiff.

It appears from the record that one Francis Preston borrowed a sum of money from the Bank of the State of Missouri, at Chillicothe, and that Thomas A. Preston, Hudson, and Austin, all of whom are made defendants, were his securities for the payment of the money. Francis Preston, the principal, died, and the bank proved up the demand against his estate. The administrator of Preston, deceased, paid a portion of the demand; and the balance remaining unpaid, suit was commenced against the sureties, and judgment recovered. After the rendition of the judgment, and while the same continued a lien on the realty, Thomas A. Preston, one of the defendants, for a full consideration, sold and conveyed his land to the plaintiff. The other two sureties also possessed real estate, on which the judgment constituted a lien. Before the expiration of the lien, the bank sued out execution on its judgment, and levied the same on the lands owned by the plaintiff, and which he had purchased of Thomas A. Preston. Plaintiff, to protect himself and keep his lands from being sold, paid up the full amount and satisfied the execution, and then

applied to the bank to assign to him the judgment against the defendants, on which execution had been issued and the land levied upon, and also the claim against the estate of Preston, deceased. Previous to this, and while the lien was subsisting, Hudson and Austin sold and conveyed their real estate to Selby, Cox & Gifford, who are made parties to this suit. The plaintiff, in his petition, alleged the insolvency of Hudson and Austin; a confederacy and combination on the part of the defendants to cheat and defraud him, and to compel him to pay the whole of the debt; and prayed that the land formerly owned by Hudson and Austin, and purchased by Selby, Cox & Gifford, might be subjected to a ratable proportion of the debt, and that the bank be compelled to assign to him the judgment and claim before mentioned. There was a demurrer to the petition, which was overruled; and no answer being filed, judgment was given in substantial compliance with the prayer, which judgment was affirmed in the District Court.

This suit was instituted before the judgment lien expired, but it is contended for the plaintiffs in error that the proceeding is not sustainable; that the payment by the plaintiff operated as a complete discharge of the debt and a full extinguishment of the lien, and that it can not be further revived and extended; and that plaintiff's only recourse is an action against his grantor, who, it is alleged in the petition, is insolvent.

It has been uniformly declared and fully acted upon, in the courts of chancery in this country, that the claim for contribution among co-sureties, as well as the claim for indemnity on the part of the surety against the principal, is founded not upon contract, but upon a principle of natural justice and equity; the maxim adopted in regard to co-sureties being that equality is equity among persons standing in the same situation. (1 White & T. Lead. Cas. in Eq. 105, Am. note.) This equity springs up at the time the relation is entered into, and is consummated when the surety has paid the debt. (Wayland v. Tucker, 4 Grat. 268.)

The practice of subrogation or substitution, or the cession of remedies, is borrowed from the civil law, and, under the guidance of Chancellor Kent, has gone further in this country than in England. It is the creature of equity, and is administered so as

to secure real, essential justice, without regard to form. (Enders v. Burne, 4 Rand. 438; Douglass v. Fagg, 8 Leigh, 588.)

As soon as the surety has paid the debt, an equity arises in his favor to have all the securities, original and collateral, which the creditor held against the person or property of the principal debtor, transferred to him, and to avail himself of them as fully as the creditor could have done, for the purpose of obtaining indemnity from the principal. He is considered as at once subrogated to all the rights, remedies, and securities of the creditor— as substituted in the place of the creditor—and entitled to enforce all his liens, priorities, and means of payment as against the principal, and to have the benefit of even securities that were given without his knowledge. (Miller v. Woodward, 8 Mo. 169; McCune v. Belt, 38 Mo. 28; Seeley v. Beck, 42 Mo. 143; Hayes v. Ward, 4 Johns. Ch. 123; Lidderdale v. Robinson, 12 Wheat. 594.) In Lathrop and Dale's appeal (1 Barr, 512), Kennedy, J., reviewed the cases, and said: "From the cases it would appear that we have adopted the general rule that a surety, by paying the debt of his principal, becomes entitled to be subrogated to all the rights of the creditor, so as to have the benefit of all the securities which the creditor had for the payment of the debt, without any exception—as well those which became extinct, at law at least, by the act of the surety's paying the debt, as all collateral securities which the creditor held for the payment of it which have not been considered as directly extinguished by the surety's paying the debt. These decisions have been made upon a supposed principle of equity, which, for the purpose of doing justice to the surety who has paid the debt, interposes to prevent the judgment or security which has been so extinguished at law from being so considered as between the surety and the principal or his subsequent lien creditors."

In the case *ex parte* Crisp (1 Atk. 133), Lord Chancellor Hardwicke said that where the surety paid off a debt he was entitled to have from the creditor an assignment of the security, to enable him to obtain satisfaction for what he had paid beyond his proportion. Particular stress is laid on the fact that the plaintiff in this case was not one of the sureties, and that he

bought with notice of the lien.   This is true, and at law he
would have no other remedy than an action against his vendor ;
but it must be borne in mind that the judgment notified him of
the lien it created against the other parties, and of their liability
to contribution, and he had a right to expect that they would pay
their respective proportions.   While he would have no redress in
law in such a case, equity, in furtherance of justice, will subro-
gate him to the rights of his grantor, and charge the lands bound
by the lien in the hands of the other sureties or their grantees
who purchased with notice.   Moreover, there is a direct allegation
in the bill, which stands confessed, that there was a confederation
and collusion on the part of all the defendants to make plaintiff
pay the whole amount, and shield themselves from liability.   A
court can lend no countenance to such an arrangement.   A cred-
itor will not be allowed to collude with favorites, and perpetrate
a wrong and fraud against a third party.   The bank laid by
and held on to its judgment till a short time before the expira-
tion of its lien, and then sued out execution.   The plaintiff
offered to pay it the full amount, providing it would assign to
him the judgment, in order that he might keep the lien alive and
protect himself.   This the bank refused to do, and would do
nothing but receive the money and enter satisfaction on the
execution.   It was then doubtless supposed that the lien was
extinguished and the plaintiff's remedy was gone.   But this, as
we have seen, was a mistake.   The payment of the debt did not
discharge the lien as to those who were liable to contribution.
And the payment operated in equity as an immediate assignment
to the plaintiff of all securities held by the bank ; and it was the
duty of the bank, *instanter*, to make the transfer.   By the refusal
of the bank to perform a plain requirement of law, no lien was
divested and no right destroyed.   If there was collusion, happily
the question was presented in such a shape, and the facts are
so clear, that there is no difficulty in the court intervening and
balking the combination.   But put the most charitable construc-
tion on the transaction, and say that the bank acted from
mistaken views, still the case is the same.   The plaintiff, when
he discharged the encumbrance, was subrogated to the rights

of his vendor, and entitled to all the liens, priorities, and securities held by the creditor.

The action of the court in overruling the demurrer was correct, and the judgment will be affirmed.   The other judges concur.