Anderson, J.,
delivered the opinion of the court.
The objects of this suit were, first, to sell the sexton’s house and lot to reimburse Carson for the purchase money thereof, which he had paid; second, to assert Carson’s right to the application of the old church fund to the satisfaction of liabilities which he had incurred to raise money for the erection of the new church, and to effect the sale of said property to reimburse him for his advancements on ihe cost of its erection, and to relieve him from liabilities therefor, which the old church fund was inadequate to. The amount of his advances, and liabilities, is ascertained by the report of the master commissioner to be on the first of December, 1875, including interest, $5,862.48, to which report there being no exception, it was confirmed by the court below, and will be taken to be correct. It was excepted to by the defendants, but it appears from the certificate of the judge that the exception was afterwards withdrawn.
Eobert W. Barr held the bond of the church, ascertained *179 by said commissioner’s report to amount, with interest on the said 1st of December, 1875, to $1,083.39, the consideration of which was work and labor and furnished for the new church building. The court held that this debt was chargeable pro rata with Carson’s on the old church fund, which had been raised for the building of the new church. In that ruling of the court there was no error. After the application of the old church fund to these debts, the balance due Carson was $3,165.74, as of the 1st of December, 1875, and Barr, of the same date, $585.03, chargeable on the same property. Another bond was held by G. S. Miller, the consideration of which was purchase money for the lot on which the church was built, and which was secured by a deed of trust thereon, amounting on the said 1st of December, 1875, to $765.61. The court held that said debt was not chargeable on the old church fund, but was entitled to priority of satisfaction over Carson and Barr’s debts, out of the proceeds of the sale of the new church and the lot on which it stood. We perceive no error in this ruling of the court, if the said property is subject to sale for the satisfaction of said debts. And the court decreed the sale of said property, to satisfy said debts, unless they were paid, with interest, &c.} within ninety days from the rising of the court at its then present term.
The'court also decreed the sale of the said sexton’s house and lot, for the payment of the two protested notes, one for $600, and the other for $300; of each of which Abraham blulton was the maker, and Joseph S. Carson endorser. The said house and lot were purchased by the trustees for the church, and the said ITulton and Carson as trustees made and endorsed said notes, which were discounted in bank and the proceeds applied by them, by agreement with the vendor, to the satisfaction of his notes in bank, which were taken up by them and delivered to him in satisfaction of the purchase money of said sexton’s ' *180 house and lot, for which no conveyance has yet been . ,, made by the vendor to the church, and if it had been it is hardly probable, could, under the limitations 0f ¿he statute, have vested title in the church. The vendor retains the legal title, and he has received the Pur°hase money. He is not entitled to both land and money. The church has paid nothing. -And the trustees, who have paid the purchase money, have a right to be reimbursed by the sale of the house and lot. There is no error in the decree directing the sale.
Upon the authority of Isaacs v. Nulton, recently decided by this court and not yet reported, the president delivering the opinion, in which the whole court was unanimous, the judgments of the Federal courts set out by the plaintiff in his original bill, for which he alleged he was liable, are void judgments, and could not be enforced against him. But the securities upon which those judgments were founded were also stated, and were alleged to have been given by him, as treasurer and trustee, for and on behalf the Methodist Episcopal church at Winchester, and for its benefit, and although the judgments were void, the securities upon which they were founded were still a subsisting liability on him, against which the chureh was bound to indemnify him.
We think it was competent for the court to give his administrator, in whose name the suit was revived after his decease, leave to file an amended bill, to set out with more fulness, and greater particularity, those securities, and an account of advances which he had made for the church, and to correct any mistakes which may have been made by the original bill in the description of those securities, and the grounds of his liability therefor, and to such reimbursement from the church for the moneys he had advanced for it, and to relieve his estate from those liabilities, and to place them upon the church for whose benefit he, as its officer and agent, had incurred *181 them with its approbation. We do not regal’d the amended bill as repugnant to the original bill, or as presenting a new case, but as ancillary to the original bill, in the sentation of the case made by it more fully and accurately, with additional averments, to the end that there might be a decision of the cause upon its merits, and the attainment of complete justice between the parties. We are of opinion, therefore, that the court did not err in overruling the demurrer to the amended bill. And if there were defects in the original bill which were reached by the demurrer to it, they were cured by the amended bill, unless it can be maintained that the church property was inalienable, or not liable to be incumbered by mortgage, or otherwise, to satisfy the claims of the plaintiff for the advances he made for it, or to indemnify and save him harmless for the liabilities he had incurred on its behalf; and that is the question which we will now consider. And that involves the question whether the court erred in decreeing the sale of the lot purchased by the trustees for the erection of a church, with the house which they erected thereon, to satisfy the balance of the purchase money for the lot, secured by a deed of trust thereon, and the balance due for the advances made, and the liabilities incurred by Joseph S. Carson for the erection of said house, and the balance due Barr’s estate for work and labor and materials furnished by him for the same?
The Methodist Episcopal church at Winchester, though not a corporation, and incapable of incorporation under the constitution of the state, was an association of individuals, recognized by the constitution as a body capable of taking and holding land, under such limitations as might be prescribed by law, and entitled to be secured in the enjoyment of its property.
By the law, it is authorized to have a board of trustees, who may sue and be sued, in whom the title to its land or other property may be vested. But it is limited in the *182 right of holding land only as a place of public worship, or as a burial place, or a residence for a minister or bishop, or other minister or clergyman, who, though not in special charge of a congregation, is yet án officer of such church or religious society, and employed under its authority and about its business. And it is added, “the land shall be held for such use or benefit, and for such purpose, and not otherwise.” That would restrict it to the sacred and religious purposes mentioned, and not for merchandising, manufacturing or other secular uses. But it is not a restriction on the mortgaging or sale of the land for debt. To sell the land would not be to hold it for other purposes; and it might be held for the sacred purposes mentioned, whilst at the same time it was encumbered by mortgage or otherwise for debt contracted in its acquisition. The title is authorized to be vested in the trustees of the church or religious society; but they are restricted as to the quantity of land they may take and hold “at any one time.” These words—at any one time—seem to imply that they may alienate the lands they hold at one time, and then buy other lands, so that they do not, at any time, exceed the limitation. There is certainly nothing in these provisions of the statute which restricts or inhibits the alienation. There are limitations upon the acquisition of lands, but none, it seems, upon the alienation of any they have acquired. And the 13th section of this 76th chapter expressly authorizes the circuit court of the county wherein the lands lie, upon the application of any member of the congregation, in a proper case, to decree the sale. The authority given in that particular case does not exclude the authority of a court of equity in other cases in the exercise of its general jurisdiction to decree a sale. It may be regarded rather as predicated of the amesnability of church property to the general jurisdiction of courts of equity, just as the property of other individuals or association of individuals is, and that this section was designed *183 only to give the jurisdiction upon the application of any member of a religious society to effect a sale for the benefit of the society, and for direction to the court in the position of the proceeds of the sale.
The Methodist Episcopal church at Winchester, an association of individuals, had adopted the book of discipline of the Methodist Episcopal church as the law of their society. In chap. 3, §2 of said book of discipline, p. 264, it is provided that if the trustees, or any of them, have advanced money, or are, or shall be, responsible for any sum or sums of money on account of the said premises (that is, for houses of worship or dwellings for the preachers) which they are obliged to pay, they are authorized to raise the said sum or sums of money by a mortgage or sale of the premises. The decree in favor of Joseph S. Carson is for advances and liabilities incurred in the erection of a house of worship for the society upon a lot which the trustees had purchased for that purpose. These advances were made and liabilities incurred for the benefit of the society, and with’ their approval. And it must be considered that they were made and incurred upon the faith of the assurance contained in the book of discipline just referred to, which he relied on for his security. It was in fact a contract between him and that society that if he would advance the money he advanced, and assume the responsibilities he did, to raise the money to complete the church building, so as to provide for them a place of worship, the property should be mortgaged, or sold, if necessary to reimburse and indemnify him.
And why may not this contract be enforced by a court of equity, just as it might if it had been made with an individual or any other unincorporated association of individuals? There being no inhibition or restriction at common law of such alienations or incumbrances of their property by churches or religious societies—and we have seen that there are none by statute—an affirmative answer *184 (speaking for myself only) would seem to be, logically, the conclusion, unless there is something opposed to it, either expressly or by implication, in the constitution and government of the church or religious society in which the question arises. Upon such a question, it would seem that the law of the church must govern, its authority being unaffected by the law of the state. But the court does not feel called on to decide that question, or to intimate an opinion on it, except as it arises in this case under the provision in the book of discipline of the Methodist Episcopal church—regarding the general question as one of great importance, affecting all the churches in this commonwealth, which should not be decided except upon the fullest deliberation.
It is true that the section of the book of discipline referred to provides the mode of proceedure by which the sale may be effected by the society itself) and Carson did not proceed in that way, but resorted to a court of equity. How else could he have enforced the obligation of the society, which it was bound in good faith to fulfil—when under its new organization, through its new board of trustees, it refused, though receiving the benefit of his advances, and though he had incurred heavy liabilities—the fruits of which it was enjoying—to fulfil its obligations to him ? His right to sue the trustees is expressly given by the statute. Upon the whole we are of opinion to affirm the decree of the circuit court.
Decree affirmed.