## BUSHONG v. TAYLOR et al., Trustees, Appellants.

1. **Methodist Episcopal Church:** TRUSTEES, POWER OF. The trustees of a local church of the Methodist Episcopal Church in the United States, have authority, under its book of discipline, to mortgage or sell the church premises for the payment of money which the trustees have advanced or become responsible for to build the church.

2. ——: ——. Where the trustees refuse to exercise such power to sell, a court of equity will enforce the sale.

3. **Trustees of Church Signing Note as Individuals:** LIABILITY. Although the trustees did not add the designation of their office to their names on the note which they executed for the money advanced to build the church, yet as between them and the church, the note was the obligation of the latter, it appearing from the evidence that their signatures were made individually in order that the note might be disposed of to raise the money for the church.

4. **Methodist Episcopal Church:** UNINCORPORATED LOCAL CHURCH: TRUSTEES. The local church in this case being an unincorporated voluntary association, the trustees, from the nature of the government of the Methodist Episcopal Church, were the agents of the aggregate body of members, and of each member to the extent of his beneficial interest in the church property, in respect to debts contracted by the trustees for the benefit of the church premises.

5. **Practice:** NECESSARY PARTIES. The trustees are the only necessary parties defendant in a suit in equity, to enforce the debt against the church property.

6. **Principal and Surety:** SUBROGATION. A surety for the trustees on their note for the payment of money advanced to build the church, who pays the obligation of his principals, is entitled to be

subrogated to the rights of the trustees to subject the church to the payment of the debt.

7. **Surety**: STATUTE OF LIMITATIONS. The statute of limitations begins to run against a surety, who pays the debt of his principal, from the time of such payment.

8. **Judgment, Satisfaction of.** A note, secured by a deed of trust on land, given and accepted in satisfaction of a judgment, is a payment of the latter.

9. **Surety, Payment of Debt by**: INTEREST. A surety who pays a judgment against himself for the debt of his principal, is entitled to recover from the latter the rate of interest paid on the judgment to the time of payment and six per cent thereafter.

*Appeal from Pettis Circuit Court.*—HON. WM. T. WOOD, Judge.

AFFIRMED.

The note from which this suit originated was for the sum of $1,250, payable to Cyrus Newkirk and signed in their individual capacities by the trustees of the Methodist Episcopal Church at Sedalia, and by plaintiff, then pastor of the church. Afterwards Newkirk recovered judgment on the note against plaintiff, and sold land of the latter under execution thereon, and bought it in for a small sum at the execution sale. Subsequently, in July, 1877, plaintiff obtained a re-conveyance from Newkirk of the land on terms agreed on between them and plaintiff executed to Newkirk his note secured by a deed of trust on the land. At the time of the institution of the present suit, part of this land had been sold and the proceeds paid to Newkirk and plaintiff had executed a new note for the residue, with deed of trust on the remainder of the land. This suit was one in equity to subject the church premises in Sedalia to sale for the payment by plaintiff of the amount of the judgment on the note which he had paid to Newkirk.

*E. J. Smith, W. S. Shirk and F. A. Sampson* for appellants.

The petition fails to state facts constituting a cause of

action. It does not state the power of the trustees, nor that they had the power to do the acts charged as the foundation of this action, nor that Newkirk ever had any lien on the church property. It was error to allow plaintiff to testify to the custom of the Methodist Church in collecting subscriptions to pay debts and to make improvements. Plaintiff's case depends entirely on his own testimony, and that is contradictory and insufficient. Plaintiff's judgment was, in any event, excessive. The note only bore ten per cent interest till due, and after that six per cent. Its language is " with interest from date," not "till paid." Plaintiff's right of action was barred by the statute of limitations, the action not being on the note, but on an implied liability, and falls under the five years bar of Revised Statutes, section 3230. *Carr v. Thompson*, 67 Mo. 472; *Smith v. Ricords*, 52 Mo. 581; *Ricords v. Watkins*, 56 Mo. 553. Plaintiff had not paid the note in question so as to maintain this action. It was merged in a judgment against him, and that judgment is not satisfied. *Hearne v. Keith*, 63 Mo. 84. The court erred in permitting plaintiff to prove the action of the board of trustees by parol, when it was shown they kept a record and that record was in court. *Barcus v. Hannibal, etc., Road Co.*, 26 Mo. 102; *Johnson v. School District*, 67 Mo. 319; *First National Bank v. Hogan*, 47 Mo. 472. Even if the church received the benefit of the money, still it is not bound to pay it if the debt was originally not a legal one of the church. *Johnson v. School District, supra.* Plaintiff bases his claim solely on the action of the trustees, and they had no power to bind the church for it; the power belonged to the quarterly conference, according to church discipline. It is as much against public policy to sell a church on execution, as to sell a school house. The latter cannot be sold on execution. *State ex rel. v. Tiedman*, 69 Mo. 306. Plaintiff's proper remedy, if he has any, would be by mandamus to compel the proper officers of the church to take proper steps to make sale of the church as provided in the discipline. " The Methodist Epis-

copal Church of Sedalia" is a corporation, and is not sued as such, and for this reason the motions for new trial and in arrest should have been sustained. Until the corporation is brought in no judgment can be given against it or its property sold. R. S. 1879, § 747.

*George P. B. Jackson* and *G. C. Heard* for respondent.

In equity cases where questions of fact have been passed on by the court in the first instance, and there is evidence upon both sides, the Supreme Court will not interfere, unless the decision on the question of fact is clearly erroneous. *Davis v. Fox,* 59 Mo. 125; *Cornet v. Bertelsman,* 61 Mo. 118; *Sharpe v. McPike,* 62 Mo. 300. Whether the trustees or the quarterly conference had the power to make the contract, makes no difference in this case, for both acted; each was fully advised of the action of the other, and ratified, time and again, all that was done concerning the transaction. The trustees were the proper officers to borrow money, make notes, etc. This results from the nature of the organization of the M. E. Church. The government of the M. E. Church is presbyterial, and not congregational, in its nature. The church is composed of the aggregate ministry and membership throughout the United States, and that aggregation is the real owner of all property, including all the churches in the United States. The title is held by trustees—different trustees for each piece of property, it is true—but the beneficial interest is in the whole body existing throughout the entire country, and not in the immediate congregation which may happen to worship in any particular building. The right to manage and dispose of the property rests in the aggregate body, acting through its proper agents, who for some purposes are the trustees. The book of discipline, which is the organic law of this denomination of Christians, clearly establishes the above views. The plan of separation adopted in 1844, when the M. E. Church divided North and South, was

based upon this theory, and could have been accomplished in no other way, as was also the separation of the church in Canada from that in the United States, which occurred some years before. See *Gibson v. Armstrong*, 7 B. Mon. 481; *Smith v. Swormstedt*, 16 How. 288; 12 Am. Law Reg., pp. 201, 329, 537, and vol. 13, p. 65. And when certain seceders from this church, established in 1830 the Methodist Protestant Church, they adopted as a distinctive feature, a provision that churches were to be held in trust for the respective congregations. *Methodist Society of Georgetown v. Bennett*, 39 Conn. 294. Under the discipline, the quarterly conference is a local body, existing in and having powers only co-extensive with the congregation, and it is not in reason that such a limited body should be the one to bind the whole aggregate church. The discipline expressly authorizes this body by itself, and through its stewards, to raise money to pay the preacher, for charities and other such congregational matters, but nowhere authorizes them to do such acts as are the foundation of this suit. The silence of the discipline upon such power in the quarterly conference argues against the position of appellants. The laity in the M. E. Church act only in the quarterly conference, and the active authority over the church property is not in the laity, but in the clerical authorities, (*i. e.*, general and annual conferences,) and those acting for them. *Henderson v. Hunter*, 59 Pa. St. 335, 342. No case has been found in which the question whether the powers now being considered are lodged in the trustees, or in the quarterly conference, has been directly passed upon; but numerous cases exist where the trustees have exercised them, just as in this case, and they passed unchallenged, and were accepted as a basis for judgments of courts. *Trustees M. E. Church v. Schulze*, 61 Ind. 511; *Linn v. Carson*, 32 Gratt. 170; *Price v. M. E. Church*, 4 Ohio 515; *Trustees M. E. Church v. Garvey*, 53 Ill. 401; *Van Houten v. Dutch Church*, 17 N. J. Eq. 126, 132. The ministry and members of the whole M. E. Church in the United States were an unincor-

porated voluntary association, extending throughout the United States, and the trustees were its agents. Acting in that capacity, the trustees could bind such members of the association, as it can be shown authorized or sanctioned the particular act, and no personal liability attached to the individual members beyond such authorized acts. *Ferris v. Thaw*, 72 Mo. 446 ; *De Voss v. Gray*, 22 Ohio St. 159 ; *Chick v. Trevett*, 20 Me. 462 ; *Keller v. Tracy*, 11 Ia. 530. When the title to property is held by trustees for a voluntary association of a large number of persons, it is sufficient to sue the trustees. *Van Vechten v. Terry*, 2 Johns. Ch. 197 ; *Keller v. Tracy*, 11 Ia. 530 ; *Dillon v. Bates*, 39 Mo. 299 ; *Smith v. Swormstedt*, 16 How. 302 ; Story Eq. Plead., §§ ·140, 141, 142, 143, 144, 150, 207 a and b. This cannot be accomplished at law, and the want of a remedy there ren-·ders the resort to equity necessary. *Linn v. Carson*, 32 Gratt. 179. Newkirk accepted the note and deed of trust from Bushong as full payment and satisfaction of the judgment obtained on the original note, and that authorizes plaintiff to maintain his action. *Cumming v. Hackley*, 8 ·Johns. 206 ; *Wetherby v. Mann*, 11 Johns. 518 ; 3 Mass. 403 ; *Randall v. Rich*, 11 Mass. 498 ; *Dormer v. Baxter*, 30 Vt. ·467 ; *Elmwood v. Deifendorf*, 5 Barb. 398. Plaintiff's cause ·of action is not barred by the statute of limitations. He had no cause of action until he had paid the debt, or done what was equivalent, and the statute did not commence to run until his cause of action accrued. *Hearne v. Keith*, 63 Mo. 84 ; *Morrison v. Ins. Co.*, 18 Mo. 262 ; *Burton v. Rutherford*, 49 Mo. 255 ; *Singleton v. Townsend*, 45 Mo. 379. Newkirk was entitled to ten per cent interest until the debt was paid ; the note bore ten per cent and so did the judgment. It was not pleaded as a defense, nor does the evidence show that the church is incorporated. It was essential that the articles of association should have been filed with the Secretary of State, and the corporate existence would only date from such filing. Gen. St. 1865, p. 327, § ·2 ; *Ferris v. Thaw*, 5 Mo. App. 283 ; *s. c.*, 72 Mo. 449 ; *Hurt*

*v. Salisbury*, 55 Mo. 313. And even a proper incorporation of the church could not affect this case, for, as such corporation, it would only be a part of the general beneficiaries, and, as such, represented in this suit by the trustees. They could not have changed the title or interest in the property.

SHERWOOD, J.—This was a proceeding in equity and *in rem*. Its object was to subject certain church property of the Methodist Episcopal Church to the payment of a sum of money which became due to the plaintiff, because of a loan made by him to the trustees of that church, for which loan a note was executed by the trustees to plaintiff for $1,250, and a like note to Newkirk, and the board of trustees, also, ordered that a mortgage on the church property be executed for the purpose of securing these notes, but the mortgage was never made. The plaintiff was successful in the trial court in subjecting the church property to the payment of his debt.

The evidence fully sustains the result reached by the trial court, and, although this is an equity case, even if the evidence were not as clear in some particulars as it is, we should not feel inclined to disturb the finding, as it is our custom somewhat to defer to the trial court, which always possesses those advantages which are derived from having the personal presence and observing the demeanor of the witnesses when testifying. This has been hitherto our uniform course, and we have refused to interfere with the conclusions reached by the trial courts on mere matters of fact, unless it readily appeared such conclusions were incorrect. The matters of fact arising on this record, being thus eliminated from our consideration, we address ourselves to those questions of law which arise upon the pleadings and the facts established by the evidence.

I. In respect to the allegations of the petition, we regard them as sufficient, and that the sufficiency of those allegations is fully sustained, and the nature of the relief

sought, warranted by the case of *Linn v. Carson*, 32 Gratt. 170, which in essential incidents and circumstances, is substantially identical with the case at bar. In that case, Carson advanced money to the congregation to assist in building a church for the same denomination as that to which defendants belong, and governed by the same books of discipline, and the court of appeals of Virginia, in a well considered opinion, held that as the discipline of the church authorized sums of money, thus advanced at the instance of the trustees of the church, to be re-imbursed by a mortgage or sale of the church property, that a court of equity, at the suit of the party advancing such sums of money, would subject the church property to sale, for the purpose of satisfying the claim.

II. Contention is made by defendants, that the trustees were not the proper persons to contract, and that their contract possessed, as against the church property, no obligatory force; that this power belonged to the Quarterly Conference. This view we regard as unsound. Under the terms of the discipline it is provided that conveyances of real estate for the erection of houses of worship, shall be *in trust*, to be used, kept, maintained and disposed of, as a place of divine worship, etc., subject to the discipline, usage and ministerial appointments of said church. Sec. 378, par. 5, ch. 3. And paragraph 370 of the same chapter provides for a " board of trustees," for the church property, which board is to be elected, nothing in the local law forbidding, by the 4th quarterly conference of the circuit or station. Par. 372.

And by the terms of paragraph 374 of that chapter, if the trustees or any of them, or their successors, have advanced or are responsible for any sums of money on account of building a house of worship, or are obliged to pay such sums of money they are authorized either to mortgage or to sell the premises, after notice given to the pastor, etc. Paragraph 377 requires that the board of trustees of each circuit or station, shall hold all the church property. It is

true paragraph 381 provides that when it becomes neces-sary that a sale of the church property for the payment of debts, or with a view to re-investment occurs, that then the trustees may obtain an order for the purpose from the quarterly conference, but this section evidently does not relate to circumstances provided for in paragraph 374, where the trustees have advanced or become responsible for a sum of money for building a church as in the case at bar. In such circumstances, the power of the trustees is full, ample and complete, either to sell or mortgage the church property. And where a power of sale exists in a trustee or trustees, a court of equity may enforce a sale for the payment of the debt, and this is of common occurrence in cases of ordinary trust deeds, and *a fortiori*, where the trustee proves recalcitrant, and fails to exercise the power given him. No case appears to have been found where the point of the power of trustees to charge the church property has been directly passed upon, but several instances have occurred where such powers have passed unchallenged and formed the basis of judgments of courts of last resort. *Trustees M. E. Church v. Shulze*, 61 Ind. 511; *Linn v. Carson, supra; Price v. M. E. Church*, 4 Ohio 515; *Trustees M. E. Church v. Garvey*, 53 Ill. 401; *Van Houten v. Dutch Church*, 17 N. J. Eq. 126.

This appears to have been the construction given to the discipline by this particular society, as evinced by numerous acts of its trustees. But granting, for argument's sake, that the trustees had no such powers as those above detailed; granting that the acts of the trustees in order to charge the church property, must have received the sanction of the quarterly conference, has not this sanction been obtained? We think it has, in a variety of ways. The whole matter of the trustees giving the notes was laid before the quarterly conference the next year, 1868, and then the action of the trustees was as fully confirmed as was possible for it to be. Since that time and for a number of years, the board of trustees, as well as the quarterly con-

ference, has recognized the notes given as a church debt,. by listing them as such in the reports made by the trustees to the conference, and by paying the note executed by Newkirk in full; and it was not until 1874 that the quarterly conference struck the note of plaintiff out of the church debts. So that, so far as concerns the disposition of the present cause, it makes no matter in which body was lodged the power essential to charge the church property.

III. The trustees did not add the designation of their office to the signatures to the promissory notes. This is. explained by evidence showing that the notes were to be placed in bank in order to raise money, which required the signatures to be made individually. Nevertheless, as between the signers and the church, the notes were the obligations of the church. The church in question was an unincorporated, voluntary association and the trustees, both according to the discipline and the acts of ratification already mentioned, were the agents of that association, and, therefore, could bind such members of the association, as sanctioned the acts of the trustees, the liability of the association depending for its validity upon the act done, rather than on the form in which the act finds expression. *Ferris v. Thaw*, 72 Mo. 446, and cas. cit.; *De Voss v. Gray*, 22 Ohio St. 159; *Chick v. Trevett*, 20 Me. 462; *Keller v. Tracy*, 11 Iowa 530. And looking to the character of the. organization and the nature of the government of the M. E. Church, it would seem clear that the trustees are the. agents of the aggregate body of members, at least, so far as is necessary to upholding the relief sought for in this case, and that any member who unites with the association, under and subject to the discipline, thereby of necessity, gives to such trustees authority to act for him within the meaning of the book of discipline, to the extent of his beneficial interest in the property owned by the association, and that, in consequence of this, any debt contracted by such trustees. on account of the premises, will be the debt of the members,. so far as concerns their beneficial interest, and to the extent.

of such interest held by the trustees, and it cannot be tolerated that such an association could so convey its property as to place it beyond the reach of a court of equity enforcing the claims of its creditors. This has been so ruled even where the association was incorporated. *Magie v. Church*, 2 Beas. (N. J.) 77.

IV. Now as to the method of procedure for enforcing the obligation created by the trustees of the church. We are of opinion that the trustees were the only necessary parties defendant. They were selected by the association to hold and manage the property for the sake of convenience, and there is no necessity to look beyond them. Besides, the *cestuis que trustent* are so numerous and so constantly changing by death, removal, etc., beyond the jurisdiction, that it would be intolerably oppressive and practically impossible to bring in all the beneficiaries. In such circumstances it is allowable to proceed against the trustees alone. *Van Vetchen v. Terry*, 2 Johns. Ch. 197 ; Story Eq· Pl., §§ 148, 150, 207a. As stated at the outset, this is a proceeding *in rem*, its only object being to charge the beneficial interest of the members of the church, which was vested in the trustees in accordance with the terms of the discipline.

The trustees were empowered by those terms to mortgage or sell the church property in discharge of debts for which they had become responsible. They have failed to perform their duty in this regard to the plaintiff, and the arm of the court of equity is not too short to reach them and compel a performance of that duty. Indeed, it may be taken for granted that plaintiffs incurred the debt for the benefit of the society and with their approval, relying upon the assurances contained in the book of discipline, and on the promise made by the trustees that a mortgage should be executed to secure the debt. *Linn v. Carson, supra*, sustains this position. And it is immaterial that in that case the plaintiff was one of the trustees of the church; for the plaintiff here was a surety for the trustees, and they being entitled under the terms of the discipline to a mort-

gage on, or sale of, the property, concerning which the debt was incurred, he will on the plainest and most familiar principles be entitled to be subrogated to all their rights and remedies. 1 Story Eq. Jur., §§ 499, 499e, 502; *Furnold v. Bank*, 44 Mo. 336. The trustees being entitled to mortgage or to sell the property, and refusing to do their duty, equity will afford relief by decreeing that to be done which affords the adequate remedy.

V. Relative to the statute of limitations pleaded in defendants' answer, plaintiff's cause of action never arose till 1877, when he paid the debt of his principals, the trustees, by satisfying the judgment which Newkirk had against him and this suit was brought in 1879. *Hearne v. Keith*, 63 Mo. 84. And the deed of trust and note given by plaintiff and accepted by Newkirk, in satisfaction of the judgment, was tantamount in law to a payment thereof. *Witherby v. Mann*, 11 Johns. 518.

VI. No objection is discovered to the amount of the judgment. The note to Newkirk and the judgment recovered upon it bore ten per cent interest; and the settlement between plaintiff and Newkirk was in 1877, up to which time the court allowed ten per cent interest and after that date the usual rate.

For these reasons we affirm the judgment. All concur.