*In Re* Final Settlement of Estate of CHARLES SWAN, Deceased; JAMES C. THOMPSON, Administrator, Appellant, v. WILLAM CUNNINGHAM *et al.*, Objectors, Respondents.

### St. Louis Court of Appeals, April 25, 1893.

1. **Administration:** SALE OF DEFENDANT'S EQUITY OF REDEMPTION IN MORTGAGED LANDS: EFFECT ON LIABILITY FOR THE MORTGAGE DEBT. When a debt allowed against the estate of a decedent is secured by a mortgage of land of the decedent, and the equity of redemption is sold by the administrator of the decedent's estate under an order of the proper probate court, the land becomes primarily liable for the payment of the mortgage debt.

2. ———: ———: LIABILITY OF ADMINISTRATOR FOR NEGLECT TO SECURE LIQUIDATION OF MORTGAGE DEBT BY PURCHASER OF EQUITY OF REDEMPTION. Accordingly, if dividends upon the debt are paid by the administrator out of the decedent's estate after such sale of the land, it is his duty to recover the amount of these payments from the purchaser. And where he has refused and failed so to do, notwithstanding that the land was sufficient in value to pay the debt, he should on his final settlement be treated as having made the claim his own, and, therefore, be charged with the amount of the payments which he has thus failed to recover.

3. ———: ———: RIGHT OF PURCHASER ON PAYMENT OF MORTGAGE DEBT. Moreover, if the purchasers pay the debt after purchasing the land, such payment will operate as a satisfaction of the debt so as to debar the purchasers from further dividends thereon from the estate.

4. ———: APPEALS. It is not necessary that all the distributees who file objections to the final settlement of an administrator should join in an appeal from the judgment of the probate court on that settlement.

5. ———: ———. An objection, that the appellants from such a judgment have no interest in the estate, cannot be raised by an objection by the appellee to the introduction of evidence in the appellate court.

6. ———: ———. A surety on demands allowed against the estate of the decedent may join in such an appeal when, though he was not a party to the objections filed to the settlement in the probate court, the order granting the appeal treats him as an objector.

In re Est. of Swan.

7. ———: ———. The heirs of an intestate may appeal from the judgment on such final settlement, notwithstanding that the estate in course of administration is insolvent.

*Appeal from the Cape Girardeau Circuit Court.*—HON. H. C. O'BRYAN, Judge.

REVERSED AND REMANDED *(with directions.)*

*R. B. Oliver* and *J. W. Limbaugh,* for appellant.

*Linus Sanford,* for respondents.

(1) If the administrator has paid the notes secured by the deed of trust, the estate of Swan has a clear equity to be reimbursed, which the administrator should enforce. He cannot apply the funds now on hand to pay this note. *Greenwell v. Heritage,* 71 Mo. 459; *Welton v. Hall,* 50 Mo. 296; *Jackson v. Magruder,* 51 Mo. 55; *Grayson v. Weddle,* 51 Mo. 523. (2) Any party aggrieved by a decision may appeal; and it is especially provided that the right to appeal shall extend to any person having an interest in the estate under administration. *Estate of McCune,* 76 Mo. 200; *Murphy v. Murphy,* 2 Mo. App. 156; *Gray v. Dryden,* 79 Mo. 106.

BIGGS, J.—The appellant presented to the probate court of Cape Girardeau county his final settlement of the estate of Charles Swan, deceased. Mary Swan, as guardian of the minor children of the decedent, and Louisa T. Cunningham and William Cunningham, her husband, filed exceptions to certain credits and to the proposed order of distribution. The probate court overruled their objections and approved the settlement. Cunningham, acting for himself, his wife and Linus Sanford, filed an affidavit for an appeal to the circuit court, which appeal the court granted. On a

trial *de novo* the circuit court sustained the objections, restated the account and approved the settlement as thus modified. From that judgment the appellant has prosecuted this appeal.

In his annual settlements the appellant had taken credit for $177.75 and 129.04, which sums were paid by him on a demand allowed against Swan's estate in favor of Elizabeth Davis. The final settlement, as presented in the probate court, showed a balance due the estate of $483.85. As this balance was insufficient to pay the demands of the fifth class in full, the appellant asked the court to order the amount to be distributed ratably among the holders of such demands, including that allowed in favor of Mrs. Davis.

The objections made to the final settlement pertain solely to the credits in the annual settlements on account of payments on the demand of Mrs. Davis, and to the proposed final order of distribution which included that demand.

The objections rest on the following state of facts: On January 17, 1877, the deceased executed his note to Greer W. Davis for $400, with David T. Pace and B. F. Wigginton as sureties. For the purpose of securing this note, and also to indemnify Pace and Wigginton against the liability assumed by them, Swan gave a deed of trust on forty acres of land. This conveyance is in the usual form, and, after reciting the execution of the note by Swan as principal and Pace and Wigginton as sureties, it proceeds: "Now, therefore, if the said parties of the first part    *    *    *    shall well and truly pay and discharge the debt and interest expressed in said note and every part thereof, when the same becomes due and payable,    *    *    *    then this deed shall be void.    *    *    *    But should the first parties fail to pay the said note or the said interest or any part thereof,    *    *    *    then the whole shall

become due and payable, and this deed shall remain in force, and the said party of the second part, * * * at the request of the legal holder of the said note or said securities or either of them, may proceed to sell the property. . * * * And such trustee shall out of the proceeds of said sale pay first the costs and expenses of executing this trust, * * * and next he shall apply the proceeds remaining over to the payment of said debt and interest, or so much thereof as remains unpaid; and the remainder, if any, shall be paid to the said parties of the first part or their legal representatives," etc.

Davis died, and Elizabeth Davis, his executrix, procured the allowance of the balance due on the note, which at the date of the allowance (1881) amounted to $355.52. At the November term, 1881, of the probate court, the appellant asked for an order for the sale of land to pay the debts of the estate. The petition for the order of sale included the forty acres above mentioned, which was therein designed as lot 3, and it contained the following statement in reference thereto: "Which land is incumbered with a deed of trust executed to David T. Pace and B. F. Wigginton by the deceased in his lifetime; and the amount secured is now $355, and is the same allowed in the name of Elizabeth Davis." After referring to another tract of land, which was also incumbered, the petition contains the following: "The said administrator further states that there are no means in his hands that can properly be applied to the redemption of said lands, and besides he does not believe it would be for the best interest of said estate to redeem; therefore, he prays that an order may be entered of record directing him to sell the *equity of redemption* in said lands for the purpose of paying the debts of said deceased at public sale." The order of sale recites the incumbrance on lot 3,

and directed its sale subject to it. In pursuance of this order of sale the appellant on the ninth day of May, 1882, sold lot 3 to James F. Brooks and R. B. Oliver for $10, and, the sale having been approved at the succeeding August term of the probate court, the appellant made and delivered a deed conveying to said purchasers the interest of the deceased in said land. Subsequently Brooks and Oliver conveyed the land by warranty deed to a third party, but they failed and refused to pay the Davis debt. Eight or ten years afterwards, but anterior to the final settlement, Pace and Wigginton advertised the land for sale under the deed of trust to reimburse them for the balance due on the Davis debt, which they had been compelled to pay. In order to prevent liability under his warranty, Oliver paid to Wigginton and Pace the amount which they had been compelled to pay, and stopped the sale of the land. Appellant made no attempt to obtain reimbursement for the estate for the amounts paid by him on the Davis debt, which payments were made subsequently to the purchase by Brooks and Oliver. There was evidence tending to prove that the value of the forty acres of land was in excess of the Davis debt. Under this proof the circuit court not only rejected the contested credits and refused to allow Oliver to share in the final distribution, but it charged the appellant with the balance due on the Davis debt.

Although Mrs. Davis had the right to demand, and it was the duty of the appellant to make, payments on her demand out of the general assets of the estate, yet it does not necessarily follow that the appellant is entitled to credit for such payments. Brooks and Oliver bought the land subject to the mortgage. The petition and order for its sale show that the *equity of redemption only* was sold. After the purchase, the land stood as security to the estate for the satisfaction

of the Davis debt.   The right to reimbursement out of the land for any payments thereafter made by the appellant on the Davis demand is beyond question. *Greenwell v. Heritage,* 71 Mo. 459; *Welton v. Hull,* 50 Mo. 296; *Jackson v. Magruder,* 51 Mo. 55.   As the assets were insufficient to pay the other debts in full, it was the duty of the appellant to enforce this equity. Having failed and refused to do so, he must be held to have elected to make the claim his own.   To hold otherwise would necessitate the extra expense of an administration *de bonis non,* which we do not think ought to be imposed on the creditors or other parties interested in the estate.

The argument that the deed of trust was collateral merely to the principal contract, *i. e.,* the note, and that no liability could arise against the land until Wigginton and Pace should have paid the note, is fallacious The deed of trust expressly states that the land was conveyed to secure the *payment of the note,* and by the terms of the instrument the *holder of the note* in case of default could authorize a sale of the land, and when sold the proceeds were to be applied to the satisfaction of the note.

Brooks and Oliver bought the right to pay the Davis demand and to take the land.   As they obtained the immediate possession of the land and received the benefit of its resale, in equity and good conscience they ought in the outstart to have paid or assumed the payment of said demand.   They did neither, but ten years afterwards Oliver, to prevent a sale under the deed of trust, thereby protecting himself from liability under his warranty deed, paid to Pace and Wigginton the amount which they had been compelled to pay. The payment by Pace and Wigginton of the balance due on the Davis demand operated in equity as an assignment of the claim to them, thus entitling *them* to

share in the remaining assets of the estate.   *Furnold v. Bank*, 44 Mo. 336; *Berthold v. Berthold*, 46 Mo. 557; *Benne v. Schnecko*, 100 Mo. 250.     But Oliver did not succeed to the equities in favor of Pace and Wigginton, for the simple reason that, as to the estate, he only did that which he ought in equity to have done in the beginning, that is, paid the Davis demand.   It would be a strange equity indeed that would allow him to be reimbursed out of the assets of the estate.   The Swan note was paid by this last transaction, and is not entitled to share in the distribution.

We think that the action of the court in rejecting the two contested credits, and in refusing to allow Oliver to share in the final distribution, was clearly right.    But upon what principle the appellant is to be charged in his accounts as administrator with the balance due on the Davis demand we cannot conceive. If the estate is protected against its payment, then no one can complain.    To this extent only is the estate interested.

The appeal from the probate court was prosecuted by Cunningham and his wife (the latter being a daughter of the deceased) and by Linus Sanford.    The order of the probate court granting the appeal recited that the appeal was taken on behalf of Cunningham and wife and "Linus Sanford, a party interested in said estate." Previous to this Sanford was in no way connected with the litigation as a party.    The appellant objected to the introduction of any evidence for the reasons:    *First.* That all the objectors did not join in the appeal. *Second.*    That the present objectors have no interest in the estate.    The objection was overruled, and this action of the court is assigned for error.

It was not necessary for all the heirs to join in the appeal.    Any one of them could have made the objections in the first instance, and we know of no reason

why one or more of them could not prosecute the appeal without the others joining. Nor is there any merit in the second ground of objection. If the objectors had no interest in the litigation and the evidence so showed, it would have afforded ground for the dismissal of the appeal. As an objection to the admission of any evidence it was untenable, because the court could not know until the evidence was heard whether the objectors were proper parties or not.

On the hearing Sanford testified that he was security on one or two notes for the deceased. This entitled him to join in the objections to the settlement. It is true that the transcript of the proceedings in the probate court does not show that he was a party to the original exceptions, neither does it show that his name was formally entered as an objector, but the order granting the appeal treats him as such, which we think is sufficient. Therefore, the argument, that the objectors had no substantial interest in the settlement of the estate by reason of its admitted insolvency, goes for nothing. We think, however, that the heirs, although the estate was insolvent, had such an interest in the payment of the debts of their father as entitled *them* to carry on the litigation. Other assets of the estate might be discovered, and they should be permitted to protect their interest in view of such a contingency.

On account of the error in charging the appellant with the balance of the Davis demand, we are compelled to reverse the judgment. The judgment will therefore be reversed and the cause remanded with directions to the circuit court to restate the administration accounts of the appellant in conformity with this opinion. We would suggest that the settlement and final order of distribution should be fully set forth in the decree, and that the record as thus made be certified to the probate court for final adjustment. The

costs of this appeal will be equally divided between the appellant and the objectors. It is so ordered. All the judges concur.