McCune v. Belt et al.

JOHN S. McCUNE, Appellant, v. HENRY B. BELT et al., Respondents.

1. *Bills of Exchange—Notice.*—If, either by express terms, or by the necessary or natural implication of the language used, the notice of protest of a bill of exchange contains in substance a true description of the bill, with a statement of its presentment and dishonor, and that the holder looks to the party to whom the notice is sent for payment, it is sufficient. An immaterial variance in the description of the bill will not vitiate the notice; to be fatal, the variance must be such that, under the attendant circumstances, the notice conveys no. adequate or sufficient knowledge to the party of the identity of the particular bill which has been dishonored.

2. *Securities, Discharge of.*—To discharge a surety, the creditor must, by some act or agreement with the principal debtor, so tie his hands as to suspend his right of action, or prevent his bringing suit to enforce the collection of the debt.

3. *Surety—Securities.*—The surety is entitled to the benefit of all the securities which the principal debtor gives to the creditor.

## Appeal from St. Louis Circuit Court.

This was a suit upon a bill of exchange, dated St. Louis, Oct. 23, 1860, drawn by defendants, in favor of the plaintiff, upon Jno. J. Anderson & Co., and accepted by them, payable sixty days after date, at the Bank of Commerce, New York, for $5,000, protested for non-payment.

The petition alleged protest and notice to defendants. The supplemental and amended answer, upon which the case was tried, denied notice of presentment, demand and protest; alleged that plaintiff endorsed said bill for accommodation of acceptors before defendants signed as drawers, also for accommodation of acceptors, and that they were merely accommodation drawers, and sureties only ; that plaintiff, after he became owner of the bill, for a good consideration paid by acceptors, and without knowledge or consent of defendants, did give time of payment to the acceptors, and defendants as sureties were discharged. Further, that said acceptors, Jno. J. Anderson & Co., placed in the hands of plaintiff securities to a large amount, to indemnify him against his liability, which securities the plaintiff returned to said acceptors with-

out the knowledge or consent of defendants, thereby expos-
ing them, as sureties, to great loss and damage ; that the
acceptors, by payments and the proceeds of securities placed
in his hands, had been paid the amount due upon the bill;
that said acceptors, to indemnify plaintiff for his liability
upon this bill and other indebtedness, gave him other securi-
ties; and claiming that, as sureties, they were entitled to the
benefit of these securities ; and prayed an account thereof,
and relief, &c.

At the trial before the court, without a jury, the plaintiff
read the bill and protest thereof, showing demand on Decem-
ber 24, 1860, and the notary enclosed the notices to drawer and
endorsers to the cashier of the Bank of Missouri on the 26th
of December, the 25th being Christmas, in time for the mail
of that day. He then attempted to prove notice delivered
to the defendants. The witness who delivered the paper, sup-
posed to be the notice to the defendants, testified that the
paper shown him was the paper served upon defendants.
This notice was dated New York, December 24, 1860, and
described a bill for $5,000, dated October 28, (not 23d, the
date of bill sued on,) no place of drawing mentioned, drawn
by defendants, and accepted by Jno. J. Anderson & Co., and
endorsed by defendants ; it did not state that it was endorsed
by plaintiff. To avoid the defects in this notice, the plaintiff
attempted to show that the same parties were not upon any
other bill to which such notice could . apply, although it ap-
peared that defendants were upon Anderson's paper, as ac-
commodation drawers or endorsers, to large amounts, and
that there were one or two other bills for $5,000 in that
month at the Bank of St. Louis. He also attempted to show
that defendants, in conversation with the acceptor, spoke of
their liability upon this bill, and they were told that plaintiff
had taken up the bill, and that the acceptors had secured him.
The defendants contended that notice of protest of the bill
was not proved to have been given them.

To prove their equitable defences of extension of time, sur-
render of securities, and reception of securities, and the

dealings between plaintiff and Jno. J. Anderson & Co., defendants showed that this bill was taken up by McCune at the Bank of Missouri, on December 22, 1860, by the discounting of a new bill for $5,000, drawn by N. B. Mulliken, and accepted by McCune; that the proceeds were $4,850, and that the balance, $252.41, was paid by check. The items of this were, interest $150, exchange $100, protest and telegraph $2.41; total $252.51.

It appeared that McCune, in his account rendered to Anderson & Co., December 22, 1863, charged for exchange $400, instead $100, the actual rate at that time, as evidence tending to show that the bill had been extended for Anderson, and that he was charged with the exchange when the renewed bill matured; and that this $252.41 was paid by J. J. Anderson to McCune in December, 1860, the renewal being for his benefit, and he paying the discount, exchange and expenses.

It appeared that John J. Anderson & Co. were bankers, and, being hard pressed, applied to the Bank of Missouri for $25,000 loan, and the bank agreed to make the loan; and he made three bills, accepted by himself—this of $5,000, at 60 days; one of $10,000, at 4 months, drawn by Howard and endorsed by McCune; and one at 90 days for $10,000, endorsed by George Knapp & Co. and drawn by McCune.

Anderson, being embarrassed, suspended; and upon McCune applying to him for security for his endorsements and his deposit account of $4,550.11, transferred to McCune his interest in railroad contracts and lands from New Orleans to Houston, Texas. This interest cost $50,000, and was valued by some parties at higher rates. This was afterwards returned by McCune to plaintiff, and other securities taken. Anderson turned over this agreement to one Eldridge for $38,000. This security was given to McCune in November, 1860, before the protest.

Anderson gave McCune afterwards two notes of $5,000 each, secured upon a tract of land near Hannibal, known as the Broadaxe tract; a judgment against Sophia Tatum for $12,600; and four notes of $7,000 each, secured by deed of

trust upon a lot on Olive street, subject to a prior deed of trust for $12,000. These notes were payable to one F. A. Howard, and from this McCune realized $17,373.64 : these were given in November, 1860. For his deposit account, Anderson gave McCune two notes. The securities were given to McCune to indemnify him against his liability to the Bank of Missouri for $25,000 and the deposit account. Upon the renewal of the bill sued upon, Anderson paid Mc-Cune the interest and exchange in December, 1860, $252.41. Anderson also made payments to McCune upon these liabilities ; he also gave McCune a note for $10,000, secured upon some mines. The notes for the deposit account were dated March 2, 1861, at 9 and 12 months.

The plaintiff then asked the court to give the following instruction :

1. If the court find from the evidence that the bill of exchange sued on was presented at the Bank of Commerce, in the city of New York, on the day which it became due ; that it was not paid ; that the same was protested for non-payment on that day, and that notice given in evidence by defendant was on that day sent to the Bank of the State of Missouri by mail ; that said notices arrived here on the 29th day of December, 1860, and were on that day sent to defendants ; that defendants knew that said notice referred to the bill of exchange sued on,—then the plaintiff is entitled to recover the amount of the said bill, together with ten per cent. damages thereon, and interest upon the same at the rate of six per cent. per annum.

To which refusal of the court the plaintiff then and there excepted:

The defendants asked the court to give the following instructions:

1. If the plaintiff McCune, for a valuable consideration to him paid by John J. Anderson & Co., the acceptors of the bill of exchange sued upon, did give delay and —— time of payment to said acceptors without the consent of defendants,

the defendants, the drawers of said bill, were discharged from any liability upon said bill.

2. If the plaintiff, at the request of said John J. Anderson & Co., did become surety for them at the Bank of Missouri for the sum of $25,000, either as drawer or endorser of the bill offered in evidence, to-wit, that sued upon, and two bills of $10,000 each, all dated October 23, 1860; and if the said John J. Anderson & Co., before the maturity of any of said bills, did give the plaintiff his four negotiable promissory notes made by John J. Anderson, each for the sum of $7,000, two payable at two years, and two payable at one year, secured by the deed of trust offered in evidence; and if the said Anderson did subsequently give to the plaintiff his two notes of $5,000 each, payable at one and two years, secured by deed of trust upon the Broadaxe tract, offered in evidence, thereby taking, accepting and holding the said notes of said Anderson, the plaintiff did give time to said Anderson, and thereby did discharge the defendants, who were sureties of said Anderson upon the bill sued upon.

3. The defendants, upon the face of the bill as drawers, were sureties of John J. Anderson & Co.; and if the defendants signed their names as drawers of said bill, after the same had been endorsed by the plaintiff, for accommodation of John J. Anderson & Co., the acceptors, then the defendants were accommodation drawers, and defendants had notice of that fact.

4. If the said John J. Anderson & Co. did deposit with plaintiff, before the maturity of said bill sued upon, securities against the plaintiff's liability on said bill and security for the balance due upon deposit account, $4,550.01, and the two bills for $10,000, and if the plaintiff did so, without consent of the defendants, return any portion of said securities to said Anderson in exchange for other securities given by said Anderson to said plaintiff, the plaintiff thereby discharged the defendants from their liability, as sureties, to the extent of the value of the securities surrendered to said acceptors.

5. The value of the securities thus returned by plaintiff to

said acceptors is to be determined by their value at the time of said return and substitution; and although the plaintiff was not obliged to accept said securities from the acceptors, yet, having accepted them, he was in equity under obligation not to deal in any manner with such securities to the injury of the securities without their consent.

*Glover & Shepley* and *Holliday*, for appellant.

I. The relation of creditor and principal did not exist between the plaintiff and Anderson when Anderson gave to plaintiff securities as collaterals, and the principles governing such relations have no application here even if the securities had been given to secure this debt alone.

1. These securities as originally given by Anderson to McCune were given in November, some six weeks before the maturity of the bill sued on. They were given to secure the individual liability of McCune; and if McCune had been in any way released from his obligation on this paper, McCune would not have the smallest right over that paper, nor could either the holder of the paper or the accommodation drawer in any way lay claim to it.

2. There is no relation of co-sureties here as between the accommodation endorser and drawer, otherwise there would be contribution between them, and a moment's consideration of their relative positions will show that this cannot be. If McCune, paying and taking up this draft, had collected from securities, given by him to secure his liability on this particular draft, two thousand dollars, he could recover the $3,000 remaining unpaid from the drawer; but if he, in any sense, stood as co-surety, he would have to account to his co-surety for one half of what he secured, and the co-surety would be liable for only one half of what he paid.

Therefore it is clear, that, if collateral securities had been given plaintiff to secure his liability upon this bill alone, in taking it the plaintiff took it for himself alone, and had a right to treat it as he thought best for his own protection, and was in no manner bound to consult the drawer as to

what disposition he should make of it. It was not intended to secure the drawers, but was an additional security given to the endorser in addition to the solvency of the drawers and acceptor and their ability to pay; and with that additional security the endorser could deal as he pleased.

II. But even if the principle contended for by the defendants were good as applied to a case where collateral security had been taken for this bill alone, yet it has no application to the case as here presented when the security was given not only to secure plaintiff's liability upon the bill in suit, but also for two other bills of larger amount and a large indebtedness due by Anderson to plaintiff.

III. Even if the plaintiff did stand in the position of creditor of Anderson, dealing with the principal debtor, yet the accepting of Anderson's notes payable at one and two years, and secured by mortgages on real estate, is no giving of time to Anderson, and does not operate as a discharge to the defendants—Twopenny v. Young, 2 B. & C. 208; Emes v. Widdowson, 4 Carr. & P. 151; Whiterell v. Brigham, 19 Pick. 117; U. S. v. Hodge, 6 How. 279; Morgan v. Martien, 32 Mo. 438, t. p. 440; Miller v. Rawson et al., 34 Mo. 362.

What was there in this transaction which prevented McCune from going to Illinois or New York and attaching any property he might there find belonging to Anderson? The first and second instructions of the defendants, holding as they did this doctrine, were clearly erroneous.

IV. The plaintiff, if he be held to be in the position of a creditor taking security for the individual debt from the principal debtor, yet, by relinquishing some securities and receiving others in their stead, does not discharge the surety to the value of the security so relinquished, but only to the amount of the difference between the value of the securities relinquished and those received in their place.

This is so obvious as scarcely to call for argument or authority, for it is obvious that the surety is not injured by relinquishing a security worth $1,000 and receiving another in

its place worth $2,000—Ramsey v. Lewis, 30 Barb. 403; Young v. Cleaveland, 33 Mo. 126.

V. Under the circumstances of the case, the plaintiff, if he stood as creditor dealing with a principal debtor, was fully justified in relinquishing the particular security he did, and accepting the other security which Anderson tendered to him at the time; for,

1. By accepting that contract in relation to the Texas railroad he in no way became responsible to pay the $6,120, as well as other undetermined amounts called for, for which this contract was pledged. He took it expecting that Anderson would pay this, but Anderson's failure prevented this. Was he obliged to advance upon this doubtful enterprise $6,120, and other amounts due Haskell? No one will pretend that he was. Was it his duty to keep it in his hands after he had determined not to make the advance necessary to release it from the forfeiture? or was he obliged to retain it in his hands, thus making it valueless to Anderson and his creditors as well as to plaintiff? We say that, first, it was a security given to him alone, with which to deal as he pleased; but if not, that, after he had refused to render it valuable by paying what was due thereon, he had no right to render it valueless by retaining it till a forfeiture should ensue, and that he would have rendered himself liable had he done so.

VI. The instruction of the plaintiff should have been given.

The only question arising here is, whether Belt & Priest had proper notice of the dishonor of the bill. There was no other bill of this amount upon which they were in any capacity with Anderson. There was no other bill of any amount that became due at this time; there was no bill at any time but this that they were the drawers of. Therefore, apart from the admissions of Priest, the notice was amply sufficient to show them what bill had been protested. Where notice misdescribes a note, it can be aided by showing that there is no other note in existence to which notice would apply—Ca-

yuga Bk. v. Warden et al., 1 Comst. 413; Smith v. Whiting, 12 Mass. 6; Mills v. Bk. of the U. S., 11 Wheat. 431, and remarks of Judge Story at p. 437 ; Shelton et al. v. Braithwaite, 7 Mees. & W. 436.

*Whittelsey*, for respondents.

I. There was no sufficient proof of notice of the protest of this bill given to defendants. As drawers they were entitled to notice—Sto. Bills, §§ 301, 378, 381, 390, n. 7.

The notice sent does not describe this bill. It describes a bill drawn and endorsed by defendants, not by McCune. It varies in the date; it is described as dated October 28; this bill is dated October 23. It is in evidence that defendants were endorsers and securities upon other bills for like amounts at Southern Bank and Bank of St. Louis.

The court has found the issue for the defendants rightly upon the evidence.

II. The drawer was discharged by the plaintiff giving delay of payment to acceptor, Anderson, who was the principal debtor—Smith v. Rice, 27 Mo. 501; 27 Mo. 187. Interest paid in advance, good consideration for time—Grafton Bk. v. Woodward, 5 N. H. 99; 2 Am. L. C. 172.

Anderson paid McCune $252.41, the amount paid by McCune for renewal at the Bank of Missouri, and was therefore entitled to the extension granted McCune. McCune charges Anderson in his account eight per cent. for exchange, which must have been the exchange at the maturity of the second bill in renewal, as it was only two per cent. that McCune paid the bank, and that he was paid by Anderson—Whitcher v. Hall, 5 B. & C. 269; 8 Dow. & Ry. 22; Martin v. Thomas, 24 How. 315; Miller v. Stuart, 9 Wheat. 702; Ford v. Beard, 31 Mo. 459; Rees v. Berrington, 2 Ves. 540; Clipinger v. Creps, 2 Watts, 45. By taking notes payable at a future day, delay is presumed by law—Walton v. Mascall, 13 Mees. & W. 452; Fellows v. Prentiss, 3 Denio, 412; Ohie v. Spencer, 2 Wheat. 233. McCune treated all his liabilities as one debt. In fact, it was a *novation*. For the

deposit account, he took Anderson's notes at nine and twelve months, and could not sue on that debt. He took other security.

III. McCune parted with securities he held without consent of defendants, as sureties, and *pro tanto* discharged them. The Texas security was worth $38,000; it realized that amount —Theob. Sure. § 174; Mayhew v. Critchett, 2 Swanst. 185; Taylor v. Jeter, 23 Mo. 244; Calvert v. London D. Co., 2 Keen, 639; 1 Sto. Eq. § 325; Rice v. Morton, 19 Mo. 363, authorities cited; S. P. Bank Mo. v. Matson, 24 Mo. 333; Ferguson v. Turner, 7 Mo. 498; Baker v. Briggs, 8 Pick. 122; Commonw. v. Miller, 8 S. & R. 452. That the sureties were entitled to the benefit of the securities given by the principal debtor to his creditor—Theob. Sure. § 270; Miller v. Woodward, 8 Mo. 169; Wright v. Morely, 11 Ves. 22; Parsons v. Briddoch, 2 Vern. 60; Cheeseborough v. Milland, 1 J. C. R. 403; Hays v. Ward, 4 J. C. R. 123; Crump v. McMartrey, 8 Mo. 409; Smith v. Schneider, 28 Mo. 447; Haven v. Foley, 18 Mo. 138.

IV. The defences, apart from the want of proper notice, are made at equity, and the chancellor has found the issues for the defendants. The defence was completely made out. McCune took one security for his whole debt; he surrendered that and took others in exchange without consent of defendants. He chose to act for himself, without consulting them, when they had been informed and supposed that he was perfectly secured; and that they were discharged. He cannot now complain. He has collected $20,000 from the securities given him, and now claims the whole of this bill of defendants.

WAGNER, Judge, delivered the opinion of the court.

The giving of notice to the drawer and endorser of a bill of exchange, as well as presentment for demand, is unquestionably a condition precedent to fixing their liability. No precise form or particular language is necessary in the notice; but it will be sufficient, if, either by express terms or by the

necessary or natural implication of the language used, it contains in substance a true description of the bill, with a statement of its true presentment and dishonor, and that the holder or other person looks to the party to whom the notice is sent for indemnity—Sto. Bills, § 390.   An immaterial variance in the notice describing the bill will not vitiate it.   To be fatal, the variance must be such that, under the attendant circumstances, the notice conveys no adequate or sufficient knowledge to the party attempted to be held liable of the indemnity of the particular bill which has been dishonored. And when the notice is defective in some particulars, it may be aided by parol evidence, by showing there is no other bill in existence to which the notice will apply.   There is no controversy about the notice being in time.   But the notice states that the bill was drawn and endorsed by the defendants, dated the 28th day of October, and accepted by Jno. J. Anderson & Co., for $5,000, when, in fact, the bill was dated the 23d day of October, drawn by the defendants, endorsed by the plaintiff, and accepted by Jno. J. Anderson & Co.   Plaintiff introduced evidence tending to prove that there was no other bill for the same amount which the defendants were on in any capacity with Anderson ; that there was no other bill of any amount that became due at the time this did ; and that there was no other bill which the defendants were on with Anderson, except as endorsers.   Furthermore, it appeared from the admissions of Priest, one of the partners of defendants' firm, that they were not misled in consequence of the discrepancy in the notice.   It should have been submitted as a question of fact, whether the defendants must not have known that the notice referred to this particular bill.

From the facts appearing in the case, it is not shown that the plaintiff placed himself in such a situation with Anderson, by giving time, as would discharge the defendants, even admitting that the parties stood relatively towards each other so that the principle applying to the release of sureties, on account of delay granted to the principal debtor, could be

invoked. This question has been before the court at this term, and was examined at some length, and the rule deducible from the authorities is, that to operate to release or discharge the sureties, the creditor must, by some act or agreement, tie his hands so as to suspend his right of action, or prevent his bringing suit to enforce the collection of the debt—Rucker v. Robinson et al. and authorities, *ante* p. 154. The case of Philpot v. Bryant, 1 Moo. & Payne, 754 ; S. C., 4 Bing. 717, was in favor of the endorser against the drawer of a bill of exchange. Shortly before the bill became due, the acceptor died, and the bill was dishonored. Subsequently, it was agreed between the executrix and the endorser that, if she would pay the interest regularly, he would give a reasonable time. The interest was regularly paid. It was held by the court that the plaintiff could recover, on the ground " that the alleged agreement to give time was not binding on either of the parties, and therefore did not suspend the plaintiff's right to proceed at any time against the representatives of the acceptor." The case proceeded upon the ground that the acceptor was the principal debtor, and the other parties to the bill — drawers and endorsers — sureties only. Mr. J. Best expressly states that " the acceptor of a bill of exchange is the principal debtor. All the other parties to a bill are sureties that the acceptor shall pay the bill, if duly presented to him on the day it becomes due." This case is not distinguishable in principle from the one at bar, and may be regarded as an authority in point. Had the holder given the acceptor time, or changed the terms of the contract, the defence might be sustained ; but such is not the case. The holder used the requisite diligence, and fixed the liability (assuming the notice to be sufficient) on the endorser and drawers ; endorser assumed the burden and took up the bill, and he cannot be considered, by this act, as standing in any other relation than that with which he was previously clothed by law. It did not make the relationship of creditor and principal debtor exist between the endorser and acceptor.

We admit, in its broadest extent, the doctrine contended for by defendants' counsel, that the surety has the right to demand the benefit of all the securities which the principal gives to the creditor. Chancellor Kent, in Hays v. Ward, 4 Johns. Ch. 123, said : " It is a settled principle in the English chancery, that a surety will be entitled to every remedy which the creditor has against the principal debtor, to enforce every security, and to stand in the place of the creditor, and have his securities transferred to him, and to avail himself of those securities against the debtor. This right of the surety stands not upon contract, but upon the same principle of natural justice upon which one surety is entitled to contribution from another." But we cannot see the propriety of the application of the principle to this case, as made out by the pleadings and evidence. The plaintiff was under no legal obligation to retain the contract with the Texas railroad, and pay the amount due Haskell to prevent a forfeiture. It might have been advantageous, but he was not sufficiently advised, and he possessed the undeniable right to relinquish the same if he chose to do so. Anderson was largely indebted to him, and the proof shows that the securities he received fell far short of paying off the individual liabilities. If a part of the securities had been specifically appropriated or assigned by Anderson for the purpose of paying off and discharging the bill sued on, we can readily perceive that the defendants might be entitled to demand that the amount so appropriated or assigned should be applied to its discharge and payment

Upon this point, the evidence is not clear, and as the cause will be remanded, if there is evidence showing this fact, it can be produced on a new trial.

Reversed and remanded. Judge Holmes concurs ; Judge Lovelace absent.