Allison v. Sutherlin et al.

---

NATHANIEL T. ALLISON, Plaintiff in Error, *v.* NATHANIEL SUTHERLIN *et al.*, Defendants in Error.

1. *Principal and surety, payment by — Subrogation, etc.*— A surety for the payment of part of the indebtedness of his principal, by paying that sum becomes entitled to a *pro rata*, or proportionate share, with the other creditors, of the proceeds arising from the sale of the debtor's property, and for that purpose may be subrogated to all the rights of the remaining creditors, so as to have the benefit of all the securities which they had.

2. *Trusts and trustees — Agreement — Expiration of time named in — Creditor unpaid, rights of.*—Where a trustee was created by a certain agreement to sell the property of the debtor and distribute the proceeds among the creditors, and by the terms of the instrument the trust was to continue only two years, a creditor omitted from the general distribution may recover his portion of the proceeds, although the time limited has expired.

*Error to Cooper Circuit Court.*

*E. B. Adams* and *Thomas B. Wright,* for plaintiff in error.

Allison, having paid the entire debt for which he was surety, was, under the rules of equity, entitled to be subrogated to the rights of the creditors who held these debts, and to have the benfit of the lien, and the moneys arising therefrom, held by them for the payment of said debts so paid by him as surety. (See 8 Mo. 169, 413 ; 18 Mo. 136 ; 23 Mo. 447 ; 35 Mo. 99 ; 38 Mo. 281, and authorities in these cases cited.)

*Draffin & Muir,* for defendants in error.

A surety for a part of a debt is not entitled to the benefit of a security given by the debtor to the creditor at a different time, in a distinct transaction, for another part of the debt. (See Wade v. Coope, 2 Sim. 155 ; 1 Lead. Cas. Eq., 3d Am. ed., 143.) The right of the surety, on payment of the debt of his principal,

to be subrogated to the place and rights of the creditor, is subordinate to the rights of the creditor and does not exist when the interests of the creditor would thereby be sacrificed; that is, the surety in such case, before he can equitably demand substitution, must discharge the whole debt secured by the liens sought to be made available to reimburse himself. (Dixon Subr. 106, 122–4; Mathews v. Switzler, 46 Mo. 301.) Subrogation is the creature of equity and will never be enforced against the superior equities of third persons, nor to the prejudice or injury of the creditor, and, therefore, not until the creditor is fully paid and satisfied. (1 Am. Lead. Cas. Eq. 161, and authorities cited.)

WAGNER, Judge, delivered the opinion of the court.

From the record in this case it is shown that the defendant Sutherlin was indebted to the banking house of Wm. H. Trigg & Co., by various, distinct and separate promissory notes, on three of which, amounting in the aggregate to about $1,800, the plaintiff Allison was surety. These three notes, together with the other notes, amounted to about the sum of $9,500. The banking house, for purposes of collection, transferred all these debts to William H. Trigg. The other defendants herein, together with Trigg, constituted the banking house. On each of the debts so held by Trigg separate judgments had been obtained in the Cooper Circuit Court. Some of the debts were for other parties, although standing in the name of the banking house. Executions were issued on all the judgments, returnable to the March term, 1864, of the Circuit Court, and these executions were levied on all of the real estate of the defendant Sutherlin, consisting of several thousand acres of land. One H. C. Levens also held a demand against Sutherlin, amounting to about $1,200, which was secured by deed of trust on some of Sutherlin's real estate; but the liens of the judgments in favor of Trigg had priority over the deed of trust.

Under the judgments the real estate of Sutherlin was advertised to be sold, and on the day of sale the defendant Sutherlin and his surety, Allison, the plaintiff here, and the creditors met at the sale; and as it was war times and there was great excitement in

the country, it was agreed by all parties interested that it would not be best to sacrifice the lands by making the sale, but to let Trigg buy them in for a nominal sum, and hold them in trust to be sold at a more suitable time, and the proceeds of the sale to be applied ratably to each of the debts. Under this arrangement made at the time of the sale Trigg bought in the lands at a nominal price, and a few days afterwards executed a writing manifesting the trust, which reads as follows : " Articles of agreement witnesseth that, whereas, Wm. H. Trigg purchased at sheriff's sale, at March court, 1864, all the lands of Nathaniel Sutherlin, for description of which pieces, etc., reference is made to sheriff's report, sale and deed ; and whereas, said Trigg purchased said lands in trust for the debts due the banking association of which he is a member, and others who had debts in his hands for collection, and for the debt due Henry C. Levens in the same proportion as the debt of said Levens bears to all said debts in the hands of said Trigg ; now said Trigg, for himself and in behalf of all said beneficiaries and said Levens, hereby agrees to make sales of said lands, or such part thereof as they may deem proper to sell, and apply all proceeds of such sales to the payment of said debts *pro rata ;* and when all said debts shall be fully paid off and discharged, if the same shall be done within two years from this date, and all interest and costs paid thereon, said Trigg shall sell and convey the residue of said lands, if any, to said Sutherlin, his heirs or assigns. The debts to said Trigg, as aforesaid, are about ninety-five hundred dollars, and the debt due to said Levens is about twelve hundred dollars ; the precise amount of either is not ascertained. Given under hand and seal, this 15th day of March, 1864.                    WM. H. TRIGG.    [Seal.]"

Trigg, under this trust, in connection with Sutherlin, who warranted the title, sold seven or eight thousand dollars' worth of these lands, leaving about 400 acres still unsold, and the amounts of these sales were paid over to the beneficiaries of the debts held by Trigg. Trigg then transferred to the defendants in this suit the balance of the lands, to be held and disposed of by them on the same terms and trusts. These parties accounted for and paid over to Levens his *pro rata* share of the money realized.

After these sales the plaintiff Allison, against whom, as surety for Sutherlin, judgment had been rendered on the notes as set forth in the petition, was compelled to and did pay off said judgments, amounting in all to about $1,800, which amount went also into the hands of the defendants, who refused to recognize the plaintiff as a beneficiary in the trust, and refused to account to him or pay over to him any part of the amount he was compelled to pay as Sutherlin's surety.

The plaintiff then brought this suit to be subrogated to the rights of the creditors under the said trust, and to compel them to account for and pay over to him a *pro rata* share of the moneys arising from the sales of the lands, and to have the remainder of the lands sold and appropriated under the trust, and his part of the proceeds paid over to him.

The case was submitted to the court on the facts as substantially set out above, and the court decided that the plaintiff was not entitled to recover.

The doctrine is well settled that as soon as a surety has paid the debt, an equity arises in his favor to have all the securities, original and collateral, which the creditor held against the person or property of the principal debtor, transferred to him, and to avail himself of them as fully as the creditor could have done for the purpose of obtaining indemnity from the principal. By paying the debt of the principal the surety becomes entitled to be subrogated to all the rights of the creditor, so as to have the benefit of all the securities which the creditor had for the payment of the debt, without any exception — as well those which become extinct at law, at least by the act of the surety paying the debt, as all collateral securities which the creditors held for the payment of it — which have not been considered as directly extinguished by the sureties paying the debt. (Furnold v. Bank of Missouri, 44 Mo. 336, and cases cited.)

We do not controvert the rule laid down in Wade v. Cooper, 2 Sim. Ch. 155, and in Matthews v. Switzler, 46 Mo. 301, the cases mainly relied on for the defendants in error, but we think that the facts in this case render it inapplicable. By the express terms of the trust the plaintiff was to be one of the beneficiaries.

It was made to cover the debt for which he was surety as well as the others. When he paid the debt, then he was entitled to a *pro rata* or proportionate share arising from the sale of the lands. He has satisfied the debt in full, and to allow the defendants to retain that amount in full and then keep the balance that the land brings would be to permit them to receive payment twice, which is wholly contrary to the intentions of the trust, and would be a palpable fraud on the rights of the plaintiff.

The fact that the two years mentioned in the writing have expired cannot defeat or affect the plaintiff's rights in the premises. The trust continues until the whole matter is wound up and settled.

There are several hundred acres of land yet remaining unsold, and the plaintiff has a direct interest in seeing that they are disposed of to the best advantage, and he is entitled to his proportionate share of the proceeds.

We think the court erred in its decision, and the judgment will be reversed and the cause remanded. Judge Bliss concurs. Judge Adams, having been of counsel, not sitting.