| 86 | 673 |
| 103 | 561 |
| 85 | 673 |
| 48a | 536 |
| 86 | 673 |
| 56a | 84 |
| 86 | 673 |
| 57a | 283 |
| 86 | 673 |
| 61a | 218 |
| 86 | 673 |
| 133 | 413 |
| 86 | 673 |
| 69a | 410 |
| 86 | 673 |
| 145 | 260 |
| 150 | 304 |

## FERGUSON'S ADMINISTRATOR v. CARSON'S ADMINISTRATOR, *Appellant.*

1. **Probate Court : APPEAL.** An appeal lies, under Revised Statutes, section 292, from the refusal of the probate court to make a preliminary order of publication for the sale of real estate to pay debts of the estate.

2. ———— : **SALE OF REALTY TO PAY DEBTS.** When the petition for the sale of the real estate, and the accompanying lists and schedules are formal and regular, and the case thus made shows a proper cause for an order of sale, it is the duty of the court to make the order of publication. The law does not contemplate an investigation of the accounts, and an inquiry as to whether there is a deficiency of personal property, until after the proof of the order of publication, and all interested persons are thereby before the court.

3. **Surety, Payment of Judgment by.** While the payment of a judgment by a surety would, at law, extinguish the debt, and the surety could maintain his action of *assumpsit* for the amount paid the rule is otherwise in equity. In the latter forum the surety i entitled to be subrogated to all the securities held by the creditor has a right to be put in his place and to that end, although the judgment is against both the principal and surety, he may, for his exoneration, be subrogated to the judgment itself, and thus have the benefit of its lien and the priority it gave the creditor.

4. **Administration : DEBT AGAINST ESTATE : SURETY.** In the defence of an action commenced in the lifetime of the deceased for a debt then in existence, his administrator gave an appeal bond, and one F became surety for the estate thereon. Subsequently, F, as such surety, paid the judgment, and took an assignment of the same and presented his demand therefor against the estate. *Held,* that when the surety paid the debt it did not lose its character of a debt against the estate, and, therefore, was not within the rule prohibiting the allowance of any claim against the estate not in existence at the time of the death of the deceased.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

VOL. 86—43

*Leonard Wilcox* and *Broadhead & Haeussler* for appellant.

(1) The demand of plaintiff on the basis on which the notice was given was void, for it was a claim originating after the death of the claimant by his having paid a judgment rendered against the estate of deceased. *Trustees, etc., v. McElhinny,* 61 Mo. 542. (2) Moreover, the circuit court, which rendered the original judgment, never had jurisdiction over the person of defendant, as the cause was never revived against him during the time required by law, and the administrator could not give jurisdiction by his appearance at trial years after suggestion of death. *Beardslee v. Morgner,* 73 Mo. 22; *Rutherford v. Williams,* 62 Mo. 253. (3) The court, under the law, had no power to allow the demand in favor of the plaintiff. He never had a demand against Carson at the time of his death; he merely paid the demands for which he was administrator's security, by going through the form of taking an assignment to his attorney, Jamison. Neither the administrator, nor his attorney, had power to waive notice on such a claim, and let it be allowed fifteen years after administration granted; and moreover, judgment was paid. *McDowell v. Lee,* 37 Mo. 204; *Hull v. Sherwood,* 59 Mo. 172; *Wernecke v. Kenyon,* 66 Mo. 283. (4) Inasmuch as the settlements showed that the administrator had ample funds, or should have had them, on hand to pay the demand claimed by plaintiff, the creditor could not obtain an order of sale of the realty when a portion of that realty had already been sold, deed made by the administrator and his sister as residuary legatees, and the funds acknowledged to be in the hands of the administrator for the purposes of administration. To permit this to be done fifteen years after such sale and charge, would be a gross fraud on the purchaser. (5) The Webb purchase money was assets of the estate for which

the administrator was liable. *Dix v. Morris*, 66 Mo. 518 ; *Campbell v. Johnson*, 65 Mo. 439, 440 ; *Boyer v. Allen*, 76 Mo. 498 ; 3 Jarmon on Wills (5 Am. Ed.) 427. (6) The administrator improperly used $5,140 of the money of the estate to pay off mortgage debts. 3 Jarmon on Wills (5 Am. Ed.) 474, 477 ; 3 Williams on Adm'r (6 Am. Ed.) 1801, 1803 ; 1 R. S., 1879, secs. 138, 149, 201, 230 ; *Lake, Adm'r v. Meier, Adm'r*, 42 Mo. 389 ; *Ross v. Julian*, 70 Mo. 209, 212 ; *Evans v. Snyder*, 64 Mo. 516 ; *Greene v. Holt*, 76 Mo. 678 ; *Cape Girardeau v. Harbison*, 58 Mo. 90 ; *Church v. HcElhinny*, 61 Mo. 542 ; *Burdyne v. Mackey*, 7 Mo. 375. (7) The administrator paid out $19,854 to special legatees and residuary legatees and devisees, which must be ignored in this proceeding. 1 R. S., 1879, secs. 243, 245. (8) The administrator should not be allowed credit for the sum of $2,109, used to pay taxes on the real estate. *Wilcox v. Smith*, 26 Barb. 337 ; *McElhinny v. Church*, 61 Mo. 543 ; *Gray v. Clement*, 12 Mo. App. 579 ; *Burdyne v. Mackey*, 7 Mo. 374, 375. (9) The sum of $1,363.52, used by the administrator to pay special tax bills, must be ignored. *In re Motier's Estate*, 7 Mo. App. 514, 518 ; *Higgins v. Ausmuss*, 77 Mo. 351. (10) The administrator had no authority to use the funds of the estate to repair or insure the real estate, and these credits must be disallowed. *In re Motier's Estate*, 7 Mo. App. 518 ; *Byrd v. Governor*, 2 Mo. 102 ; *Richie v. Withers*, 72 Mo 559. (11) Not having brought the assets of the co-partnership of J. B. Carson & Brother into the present administration, the administrator cannot be allowed credit for demands against that co-partnership estate, especially as they were never presented or allowed. 1 R. S., 1879, sec. 201, 230.

*E. T. Farish* for respondent.

(1) Upon the showing made by the administrator, and under the evidence adduced at the hearing, ft was

the duty of the court to make the order of publication required by R. S. sec. 148. (2) An appeal lay from the action of the probate court in refusing to make the order of publication. R. S., sec. 292; *McCrary v. Manteer*, 28 Mo. 446; *Duff v. Doyle*, 56 Mo. 301; *McVey v. McVey*, 51 Mo. 486; *Wilson v. Brown*, 21 Mo. 410. [3] There never was any payment or assignment of the Ober judgment, and it was a valid and subsisting demand in favor of Ferguson against the estate of Carson. When a surety pays a judgment against himself and the principal, he has a right to have it assigned to him, and to use it as a subsisting judgment against the the principal. *Goodyear v. Watson*, 14 Barbour [N. Y.] 481; *McDougald v. Dougherty*, 14 Ga. 674; *Alexander v. Lewis*, 1 Metcalf (Ky.) 407; *Creager v. Brengle*, 5 Har. 234; *Alden v. Clark*, 11 How. Pr. [N. Y.] 209; *Harbeck v. Vanberbilt*, 29 N. Y. 398. (3) It appearing that there was an unsatisfied judgment and no assets to pay it, the sale of real estate should have been ordered. The action of the probate court in refusing to make an order of publication was practically to deny the application for an order of sale.

BLACK, J.—In 1866 James O. Carson was appointed administrator, with the will annexed, of James B. Carson. The testator gave $2,500 to each of his two stepdaughters, and to a nephew one thousand dollars, to be paid as soon as practicable, and, if necessary, the executor was authorized to sell real and personal property for the payment of these amounts. The residue of his property, real and personal, he gave to his brother, James O. Carson, and sister, Mrs. Postlewaite.

In 1881 plaintiff, claiming to be a creditor of the estate, applied for an order of sale of real estate to pay debts. The administrator filed a statement showing the receipts and disbursements, disclosing a balance of $5,638.18 due to him, the plaintiff's demand, and another unpaid debt of $214.33. He also gave a schedule of the

real estate, and disclosed that there was no personal property on hand. The probate court refused to make the preliminary order of publication, and the plaintiff appealed to the circuit court with a like result, and then to the court of appeals, where the judgment of the circuit court was reversed, and the defendant then appealed.

1. The first question is, will an appeal lie from the probate court on this order?  Section 292, Revised Statutes, allows an appeal from the decision of the probate court on all orders for sale of real estate, on the refusal of the circuit court to order sale of real estate to pay debts or legacies, and in all other cases where there shall be a final decision of any matter arising under the administration law. The refusal of the court to make the order of publication was a refusal, in effect, to make an order of sale, for the former is essential to the latter, and was, also, a final disposition of the matter of the creditor's petition, so that an appeal must lie from such an order.

2. The statute provides in detail what the petition for sale of real estate, and the accompanying lists and schedules shall state ; and "when such petition and such accounts, lists and inventories shall be filed, the court shall order that all persons interested be notified," etc., and, "upon proof of publication, the court shall hear the testimony, and may, if necessary, examine all parties, on oath, touching the application, and make an order for the sale of such real estate, or any part thereof."  If the administrator fail to make the application, the creditor may make it, and the administrator must file the accounts, lists, etc. The probate court may, of course, determine the sufficiency of these papers, but when the proceedings are formal and regular, and the case thus made shows a proper case for an order of sale, as was done here, it is the duty of the probate judge to make the order of publication. The law does not contemplate an investigation of the accounts, and an inquiry as to whether there is a

deficiency of personal property until after proof of the order of publication and all interested persons are before the court. The necessity of such notice before a hearing is forcibly demonstrated by the facts of this case. The court may, at the proper time, examine the merits of the application, whether there is any opposing interest or not. The order of publication should have been made, and the hearing, as to the order of sale, had at the proper time.

3. As this case must go back to the probate court, it will be proper to consider the other questions, as far as we can, which have led to this contest. The plaintiff, as a foundation of his demand, offered in evidence a transcript of some entries from the circuit court in a case of *Ober et al. v. John B. Carson*, which disclosed that an answer was filed by defendant in 1863, a suggestion of the death of defendant made in 1866, appearance of the administrator in 1876, and judgment for plaintiffs for over fifteen thousand dollars, and a credit thereon, and an assignment of the judgment to Mr. Glover. The balance of $5,114.92 was classed in the sixth class of demands, by the probate court, on the twenty-first of March, 1879, in favor of the assignee. The demand was then again assigned to Mr. Jamison on April 19, 1879. The plaintiff also offered a demand against the estate allowed in her favor by the probate court on the fifteenth of July, 1879, which is as follows :

"To cash paid judgment rendered by St. Louis circuit court, March 30, 1879, against said estate, and in favor of Robert P. Ober *et al.*, and appealed by James. O. Carson, administrator, to Supreme Court of Missouri, and from said court he appealed to Supreme Court of the United States, and classified March 21, 1879, in St. Louis probate court. The said William F. Ferguson was surety on said appeal bond to Supreme Court of the United States." Principal and interest, $6,649.42.

The facts recited in this account do not appear to be

controverted. The evidence shows that Ferguson furnished the money with which to procure the assignment of the judgment from Glover to Jamison, and that the assignment was thus made to the latter in order to keep the judgment alive, as, by reason of the appeal bond, Ferguson stood as surety for the same debt. As matters stood at the date of the assignment to Jamison, an application was made for the sale of real estate to pay the debt, but the court then refused to make the order on the ground, among others, that the debt was paid. Thereupon, Ferguson had allowed in his favor the foregoing account, and then made the application now in question. He still relies upon the assigned account, and somewhat upon the allowed demand.

The objection made to the assigned account is, that it was paid by Ferguson, the surety, and to the allowed account that the allowance was void for want of jurisdiction in the probate court to make it, because a demand which arose subsequent to the death of the testator, John B. Carson. The payment of the judgment by the surety would, at law, extinguish the debt, and the surety would have his fresh action of *assumpsit* for the amount paid, but the rule is otherwise in equity ; there the surety is entitled to be subrogated to all the sureties held by the creditor. In addition to this, in most states of this union, notwithstanding the rule asserted in *Copis v. Middleton,* T. & R. 224, the surety has a right to be put in the place of the creditor, and to that end may be subrogated to the judgment itself, though it be against both principal and surety, and to have the benefit of its lien and the priority which it gave the creditor for his exoneration. Adams' Eq. (4 Am. Ed.) 576, n. 1 ; Story's Eq. (8 Ed.) sec. 499 *b*, n. 3 ; 1 Lead. Cas. in Eq. (Hare & Wallace's Notes) 110. The broad statement of the rule has been several times recognized as the law in this state. *Furnold v. Bank*, 44 Mo. 336 ; *Allison v. Sutherlin*, 50 Mo. 277. Nor is there anything in the cases of *McDaniel v.*

*Lee*, 37 Mo. 204, or *Hull v. Sherwood*, 59 Mo. 172, or *Burton v. Rutherford*, 49 Mo. 255, which militates against this equitable doctrine. It is true, the surety in this case does not seek to enforce his rights as such by any proceeding in equity, but the estate of Carson is in administration, the demand has been allowed and received its rank among the other demands against the estate, and it was in this attitude when the surety paid it.

It would seem the legal holder of the debt ought to be treated as a trustee to receive the dividends and pay them to the surety, and especially as the avowed purpose in procuring the assignment was not to extinguish the debt in its then form. But be this as it may, the cause of action did not arise in favor of Ferguson until he paid the debt. He then had his demand allowed, treating it as a legal demand, and why may he not do this? It was said in *Trustees, etc., v. McElhinney*, 61 Mo. 540: "Under our statute respecting administration, and the repeated adjudications of this court thereon, probate courts possess no power to allow any claim against a decedent's estate, or to order the sale of land belonging thereto, except for the payment of debts of the deceased, *i. e.*, those in existence at the date of his death." Of the correctness of this proposition of law there can be no doubt, but it has no application to this case. There the debt was created by the executrix for her personal expenses, long after the death of the testator. Here the original debt was in existence and in suit at the death of Carson. In the defence of the suit the administrator found it necessary to give the appeal bond. Ferguson became the surety for the estate, and in its behalf. When he paid the debt and presented his demand, it did not lose its character as a debt of the estate. To hold otherwise is to put estates of deceased persons at a great disadvantage in procuring sureties when required in litigated causes. The debt thus allowed is a debt of the estate,

Kelly v. The C., R. I. & Pac. Ry. Co.

within the meaning of the administration laws, to pay which lands may be sold.

4. Much is said as to whether there is really a deficiency of. personal property to pay the debts, and this grows out of the fact that James O. Carson and Mrs. Postlewaite, by their joint and individual deed, sold one parcel of property, and Carson, as administrator, charged himself in his accounts with the proceeds, and on the other hand took credit for large sums paid out of the proceeds of this sale to himself and Mrs. Postlewaite, as devisee, and for moneys paid out in procuring a one-fourth interest in the same parcel. There can be no difficulty in the accounts as between the administrator and the devisees and legatees. So far as this record shows, only one out of a vast number of parcels of property owned by the testator, has been sold by these residuary devisees, and we do not see any reason why that parcel should be disturbed. The unsold portions can be first exhausted. At all events, we cannot know what showing will be made when all the parties in interest have had an opportunity to be heard, and it would be most dangerous to adjudicate upon matters affecting the rights of others in advance of their being brought upon the record.

Affirmed. All concur.