DORA B. CLARK, Administratrix, Respondent, v. FIRST
NATIONAL BANK OF HARRISONVILLE,
Missouri, Appellant.

Kansas City Court of Appeals, March 26, 1894.

1. **Appellate Practice**: EQUITY CASES. In equity cases the appellate court will examine the evidence; and if the decree is for the right party will affirm it, and if erroneous, render such decree as it may deem proper.

2. **Creditor's Bill**: JUDGMENT. Before the creditor can maintain a creditor's bill, he must exhaust his remedy at law; and, in general, but with exceptions it must be shown that a judgment was secured and execution returned *nulla bona*.

3. **Principal and Surety**: SUBROGATION: NO JUDGMENT. The sureties of a receiver paid the amount found due by the receiver in his settlement with the court. *Held*, they were subrogated to the rights of the beneficiaries to whom they paid, the money to follow it in the hands of the defendant bank which had wrongfully applied the money with notice of its trust character to payment of the receiver's individual debt to the bank; and the sureties may maintain a bill against the bank without first recovering a judgment in *assumpsit* against their principal. The authorities and principles relating to subrogation and principal and surety are reviewed and discussed.

4. **Receiver**: SETTLEMENT: SURETIES. On a settlement with a receiver the order of the court is binding not only on the receiver, but his sureties as to the amount due by the former on account of his receivership.

5. **Trust and Trustees**: TRUSTEE EX MALEFICIO: BANK USING DEPOSIT. Whenever a party has obtained money which does not equitably belong to him, and can not in good conscience be retained or withheld from one beneficially entitled to it, a constructive trust arises; and a bank can not use a deposit to pay the individual debt of its depositor, when it knows that the deposit is held in a fiduciary capacity, and there is sufficient evidence in this case to bring notice of the fiduciary capacity of the deposit home to the bank.

6. **Appellate Practice**: DEFERRING TO TRIAL COURT IN EQUITY COURT. When there is a conflict of testimony or it is evenly balanced, and the finding of the chancellor appears to be correct, the appellate court will so far defer to the finding as to sanction it by an affirmance.

7. **Pleading**: SUBROGATION. A petition to enforce the right of subrogation should state all matters and facts which give rise to the right claimed, and the petition in this case is held to comply with the rule.

*Appeal from the Cass Circuit Court.*—HON. W. W. WOOD, Judge.

AFFIRMED.

*H. Clay Daniel* and *Noah M. Givan* for appellant.

(1) Plaintiffs, as securities, have no standing in a court of equity and can not maintain this action, which is a suit in equity, without first having recovered judgment, and having exhausted their legal remedies, or without being subrogated to the rights of those who have recovered such judgment and exhausted their legal remedies against the principal and his property. *Martin v. Michael*, 23 Mo. 50; *Turner v. Adams*, 46 Mo. 99; *Fisher v. Tallman*, 74 Mo. 40; *Crimm v. Walker*, 79 Mo. 335; *Dodd v. Levy*, 10 Mo. App. 121; *Merry v. Fremon*, 44 Mo. 518; *Humphrey v. Milling Co.*, 98 Mo. 548; *Mullen v. Hewitt*, 103 Mo. 649; *Reyburn v. Mitchell*, 106 Mo. 377; *Walser v. Seligman*, 13 Fed. Rep. 415; *Jones v. Green*, 1 Wall. 330; 17 L. C. P. Co. 553. (2) The beneficiaries in the partition suit could not have reached the alleged trust fund in question, in the hands of defendant bank, in a court of equity without first having reduced their claim to a judgment and exhausting their legal remedies against him, and plaintiffs can not be subrogated or substituted to any greater or different rights than those of the original beneficiaries. High on Receivers [2 Ed.], sec. 129; 2 Bouvier's Law Dictionary, title, Subrogation, 554; Authorities cited under point 1. (3) The order made by the circuit court on June 29, 1891, p. 15, ordering the receiver to turn over the balance in his hands,

was simply an order, not a judgment. R. S. 2208, 2206; High on Receivers [2 Ed.], sec. 129; Freeman on Judgments [3 Ed.], secs. 15, 255, 325, 327; *Loring v. Ilsey*, 1 Cal. 27; *Gilman v. Contra Costa Co.*, 8 Cal. 57. (4) The word, receiver, added to Whalen's name in the note or notes in question, was no notice to defendant bank that Whalen held them as trustee or that they represented a trust fund. *Eyerman v. Bank*, 13 Mo. App. 289, affirmed 84 Mo. 408; *Powell v. Morrison*, 35 Mo. 244; *Thornton v. Rankin*, 19 Mo. 193; *Fletcher v. Schaumburg*, 41 Mo. 501; *Jeffries v. McLean*, 12 Mo. 538; 2 Morse on Banks and Banking, sec. 604. (5) Even if plaintiff had any standing in a court of equity it devolved on them to prove, by a preponderance of the evidence, that Mr. Saeger, the president of the defendant, had notice of the nature of Whalen's title to the Holloway note, and as a preponderance of the evidence did not prove that fact, the court should have found for defendant on that question, and the appellate court will review and correct its finding of facts in equity cases. *Benne v. Schnecko*, 100 Mo. 250; *McElroy v. Maxwell*, 101 Mo. 294; *White v. Pendry*, 25 Mo. App. 542.

*R. T. Railey* and *Burney & Burney* for respondents.

(1) It was not necessary for plaintiffs to first sue Whalen and exhaust the legal remedies against him before bringing the suit. *First*. Because Whalen was insolvent and such proceedings would have been of no avail. *Merry v. Freemon*, 44 Mo. 518; *Turner v. Adams*, 46 Mo. 95; *Pendleton v. Perkins*, 49 Mo. 565; *Lyons v. Murray*, 95 Mo. 23; *Humphreys v. Milling Co.*, 98 Mo. 542; *Reyburn v. Mitchell*, 106 Mo. 376. *Second*. Because this action is for the recovery of money upon which plaintiffs have an "equitable claim,"—it

was a trust fund. `Renshaw v. Wills, 38 Mo. 202; Ranney v. Brooks, 20 Mo. 105; Eyerman v. Bank, 13 Mo. App. 298; Turner v. Hoyle, 95 Mo. 337; Payne v. Bank, 43 Mo. App. 377; 2 Pomeroy, Eq. Juris., secs. 1047, 1048, 1080; Duncan v. Jandon, 15 Wall. 165; Bank v. Ins. Co., 104 U. S. 54; Loring v. Bank, 134 Mass. 453; Smith v. Ayr, 101 U. S. 320. (2) The money realized from the notes given to Whalen as receiver was a trust fund, and was illegally used by the bank to pay the individual indebtedness of said Whalen. Ruby v. Watson, 22 Mo. App. 428; Furnold v. Bank, 44 Mo. 346; Cowgill v. Linville, 20 Mo. App. 138; Burnside v. Fetzner, 63 Mo. 107. (3) The bank had notice of the character of this trust fund. It was not an innocent purchaser. It was not a purchaser at all. It did not pay value. It took the notes for collection and wrongfully converted the proceeds, with knowledge of the facts. Ranney v. Brooks, supra; Renshaw v. Wills, supra; Turner v. Hoyle, supra; Payne v. Bank, supra.

SMITH, P. J.—The petition, amongst other things, stated that there was a certain suit in partition pending in the circuit court of Cass county, wherein certain persons named were plaintiff's and defendants, the object of which was to obtain a decree and judgment of partition of certain real estate; that during the pendency of said suit the said court made an order appointing E. P. Whalen receiver in said suit, and as a part of his duties as such he was required to take charge of, control, rent, and collect the rents of the said real estate and pay over the proceeds thereof to the successful party in the said suit whenever the same should finally terminate; that said receiver before entering upon his duties was required and did enter into a bond in the sum of $3000 conditioned for the faithful performance of his duties as such receiver with the

plaintiffs as sureties thereon, and which said bond was by the court approved; that the said receiver in pursuance of the orders of said court rented said real estate for two years taking for the rent from the parties to whom rented certain promissory notes payable to himself as such receiver; that said notes amounting to something like the sum of $1,040 were placed in the hands of the defendant, an incorporated bank, for collection, and which were by it collected; that at the time said notes and the proceeds thereof which were trust funds, were left with defendant, the said receiver was indebted individually to said bank in large sums no way connected with said receivership; that defendant after having collected said notes with knowledge of the character of the same and of the title by which said receiver held them, wrongfully and illegally appropriated the proceeds thereof to the payment of the private and individual debts of said receiver due said defendant to the amount of $571.95, without the knowledge of the said court or the parties to said suit or the knowledge or consent of plaintiffs or either of them; that afterwards the said suit was terminated in favor of the plaintiffs therein, and that there was then found to be due them by said receiver the sum of $619.70; that the said receiver paid into court $102.28 and that the plaintiffs as such sureties were compelled and did pay the balance due by said receiver amounting to $517.42; that the said receiver was insolvent and unable to repay the said amount of money so paid out by plaintiffs for him as his sureties, and that the same would be lost unless the trust funds so diverted and misappropriated by defendant be accounted for and paid over to plaintiff as in equity and good conscience they should be. The prayer was for special and general relief. There was a hearing which resulted in a decree for plaintiff, from which defendant has appealed.

It is our duty by virtue of our supervisory control over questions of fact in equity cases to examine the evidence, and if the decree is for the right party to affirm it, or if it is erroneous we may render such a decree as we deem proper under the pleadings and evidence. *Estes v. Fry*, 94 Mo. 266.

The question therefore is, whether or not, if the facts alleged in the petition are proved, the plaintiff is entitled to equitable relief. The defendant objects that the plaintiffs as sureties have no standing in a court of equity and can not maintain this suit without first having recovered a judgment in *assumpsit* against their principal, the receiver, and exhausted their legal remedies against him and his property. It is incontrovertibly true that the general rule is that a creditor, before he can maintain a creditor's bill, must show that he has exhausted his remedy at law, and this is so because a court of equity will not entertain such suit when the plaintiff has a complete and adequate remedy at law. In general it must be shown that the judgment has been recovered and an execution has been issued and returned *nulla bona*. *Humphreys v. Milling Co.*, 98 Mo. 542; *Mullen v. Hewett*, 103 Mo. 637; *Crim v. Walker*, 79 Mo. 335; *Fisher v. Tallman*, 74 Mo. 39. To this rule there are a few exceptions allowed, as will be seen by reference to the following cases: *Turner v. Adams*, 46 Mo. 95; *Merry v. Fremon*, 44 Mo. 518; *Lyons v. Murray*, 95 Mo. 23; *Pendleton v. Perkins*, 49 Mo. 565.

But if the surety has not brought his suit in *assumpsit* against his principal for the recovery of the amount which he has been compelled to pay for him and has not pursued any remedy at law against him, still may not such surety by invoking the application of the equitable principle of subrogation to the facts in a case like this be granted relief? "In the civil law,

the definitions of which have in the main been followed by our courts, subrogation has been defined as that change by which another person has been put into the place of a creditor and which makes the rights of the creditor and securities that he holds pass to the person, who, being subrogated to him, enters into his right. It is said to be a legal fiction by force of which an obligation extinguished by a payment made by a third person is treated as still subsisting for the benefit of this third person so that by the means of it one creditor is substituted to the rights, remedies and securities of another. The party who is subrogated is regarded as constituting one and the same person with the creditor whom he succeeds." Sheldon on Subrogation, sec. 2; Harris' Law of Subrogation, sec. 1.

This rule has been recognized in this state, for in *Furnold v. Bank*, 44 Mo. 336, it was declared that as soon as a surety has paid the debt an equity arises in his favor to have all the securities, original and collateral, which the creditor held against the person or property of the principal debtor, transferred to him and to avail himself of them as fully as the creditor could have done, for the purpose of obtaining indemnity from the principal. He is *considered at once subrogated to all the rights, remedies and securities of the creditor as substituted in the place of the creditor."* And a like recognition may be found in the following other cases in this state: *Allison v. Sutherlan*, 50 Mo. 274; *Sevier v. Roddie*, 51 Mo. 580; *Ferguson v. Carson*, 86 Mo. 673; *Miller v. Woodward*, 8 Mo. 168; *McCune v. Belt*, 38 Mo. 281; *Sweet v. Jeffries*, 48 Mo. 279.

The doctrine of subrogation is a doctrine of the court of chancery and can not be usually enforced in a court of law. In cases where a person paying a debt stands in the situation of a surety, equity substitutes him in the place of the creditor as a matter of course.

Brandt on Surety and Guaranty, sec. 298. In section 3 of Harris on Subrogation, it is stated upon authority of the numerous adjudged cases cited in the notes to that section, "Sureties on any debt, bond, note, bill or otherwise, when clearly bound and liable are upon payment for their principal entitled to subrogation; or, a surety for a surety, where the surety pays a mortgage debt for his principal, or a land debt, surety at judicial sale, on bonds of deputy sheriffs, sheriffs, appeal bonds, bonds of administrators, guardians' bonds, replevin, injunction, stay of execution, payment of mortgage by request, or bond to prosecute a suit, bonds to the state, to the United States, custom house officers, revenue collectors for the state," and the like.

The result of the authorities is that a surety who has paid the debt of his principal is, upon the equity which springs out of the relation of principal and surety, and the fact of his payment, subrogated to all the rights and remedies of the creditor. It may, therefore, be stated that the right of a surety, when he has paid the debt of his principal, to invoke the doctrine of subrogation is not dependent upon whether he has recovered judgment against the principal and issued thereon execution which has been returned *nulla bona*, as it does in cases where the creditor by a creditor's bill seeks the aid of a court of equity to obtain relief. We can not, therefore, uphold the defendant's contention, which we must think results from a misconception of the nature of the equitable doctrine of subrogation and of the class of cases in which it may be appropriately invoked and applied.

The money collected by the receiver was in *custodia legis*, and when the partition suit was terminated there only remained to the receiver the duty to settle his accounts with the court and pay over to the beneficiaries, the plaintiffs, the amount remaining in his hands.

This settlement he made with the court, showing a balance in his hands which he was ordered to pay over to the plaintiffs. This order of the court was absolute and binding, not only on the receiver, but on the sureties as to the amount due by the former on account of his receivership. Beach on Receivers, sec. 187; High on Receivers, sec. 129; *Ball v. Chandler*, 47 N. J. L. 125. The beneficiaries thus became entitled to recover the amount due by the receiver.

The law is that when a person who has received money for the use of another neglects or refuses to pay it over to his *cestui que trust*, the person entitled thereto may maintain an action against him for money had and received. *Phelps v. Conant*, 30 Vt. 277; *Glasscock v. Lyons*, 20 Ind. 1; *Catlin v. Brickhard*, 13 Mich. 110. And it is of no importance how the money came into his hands if the plaintiff is legally entitled thereto. The beneficiaries were entitled to recover it of the receiver by an action for money had and received. If the rent money had been deposited in defendant bank to the credit of the receiver, and had there been found after the receiver had become *functus officio* and both the defendant and the receiver had refused to pay it over to the beneficiaries, it is clear enough that they could have recovered it under the generally recognized rule that when one receives money that *ex aequo et bono* belongs to another, the law implies a promise on the part of the person receiving it to pay it over to the true owner. *Robins v. Insurance Co.*, 12 Mo. 380; *Reed v. Foot*, 36 Mo. App. 471; *Norway v. Clear Lake*, 11 Iowa, 506; *Jacobs v. Pollard*, 10 Cush. (Mass.) 287.

Nor is it perceived that the rule of liability would be different in a case like this where the bank receiving the money did not enter the amount of it to the credit of the receiver on its books, but applied the same to the payment of the individual debt of the receiver to

the bank, with knowledge of the fact that such money did not belong to the receiver, individually, but to him in his capacity as receiver in the partition suit. The case of *Bodenham v. Hoskyns*, 21 Eng. L. & E. 605, was where the receiver of an estate who had a private account at a banker's, opened another there under the name of the estate, and under such circumstances as to inform the bankers that the money which would be paid into that account would belong to the estate. The receiver drew a check on the estate account and paid it into his private account. It was held by the vice chancellor that the bankers were liable to pay the amount to the owners of the estate. The notes collected by the defendant were held by the receiver in his fiduciary capacity, and of this fact it had knowledge when it applied a part of the amount so collected to the payment of the receiver's individual indebtedness to it. And if the receiver requested or consented to such application of the money belonging to the beneficiaries to his individual indebtedness, this was a breach of faith of which we think the defendant had knowledge and so can not be protected. *Renshaw v. Wills*, 38 Mo. 202; *Ranney v. Brooks*, 20 Mo. 105; *Eyerman v. Bank*, 13 Mo. App. 298; *Turner v. Hoyle*, 95 Mo. 337; *Reburn v. Mitchell*, 106 Mo. 376; *Payne v. First National Bank*, 43 Mo. App. 377; Pomeroy on Equity Jurisprudence, secs. 1048, 1080; *Duncan v. Jandon*, 15 Wall. 165; *National Bank v. Ins. Co.*, 104 U. S. 54; *Loring v. National Bank*, 134 Mass. 453; *Smith v. Ayr*, 101 U. S. 320. By the well settled doctrine of equity a constructive trust arises whenever one party has obtained money which does not equitably belong to him and which he can not in good conscience retain or withhold from another who is beneficially entitled to it, as for example, as when money has been acquired through breach of trust or violation of a fiduciary duty, and the

like. Pomeroy's Equity, sec. 1047. In *Johnson v. Payne & Williams Bank*, 56 Mo. App. 257, it is stated to be a rule deducible from many authorities, that a bank can not use a deposit to pay the individual debt of the depositor due it when it has knowledge that the deposit is held by the depositor in a fiduciary capacity and does not belong to him personally.

The defendant contends that the word "receiver," which was added to the name of the payee in the notes, was no notice to the defendant that the payee held them in a fiduciary capacity. It is true that this *addendum* alone would be insufficient to impart such notice but it seems to us that this in connection with the information which the receiver and Mr. Burney testified they gave the president of the defendant was ample to apprize defendant of the fact that said notes and the proceeds thereof were held by the receiver in his fiduciary capacity. Without entering into a discussion of the testimony further we may say that since there is some conflict in it, we shall defer to the finding of the circuit court. The rule of practice now is, that when there is a conflict of testimony, or where the testimony is evenly balanced, and the finding of the chancellor appears to be correct, then the supervising court will so far defer to the finding as to sanction it by an affirmance. *Benne v. Schnecko*, 100 Mo. 250.

It seems, therefore, clear to us that the defendant was liable to the beneficiaries in the partition suit for the amount of money collected by them for the receiver and applied to the payment of his individual indebtedness to it, and that it follows as an inevitable corollary to this proposition that the plaintiffs, who were compelled as sureties for the receiver on his bond to pay the amount specified in the order of the court to the beneficiaries, in consequence thereof, became in equity subrogated to their rights as respects the fund which

was held for their use by the defendant, and are entitled to recover the same in this action.

In relation to the sufficiency of the petition it may be stated that it has been ruled that a petition filed to enforce the right acquired by the equitable doctrine of subrogation should state all the matters and facts which give rise to the right claimed and upon which the plaintiff relies to sustain his claim so as to fully advise the court of the material facts of the case. *Lilly v. Dunn*, 96 Ind. 220; Harris' Law of Subrogation, sec. 222. And this accords with the rule of pleading required by our practice act. Tested by this rule we think the petition stated all the facts necessary to entitle the plaintiffs to the equitable doctrine they invoked.

Upon the whole case we think the plaintiff was entitled to the relief granted by the decree, which we will affirm accordingly. All concur.